In re the Marriage of Jeanine Anne
THEROUX, f.k.a. Jeanine T.
Boehmler, Petitioner, Appellant,

v.

James Herbert BOEHMLER,
III, Respondent.

No. C9–86–2021.

Court of Appeals of Minnesota.

Aug. 11, 1987.

Philip K. Arzt, Minneapolis, for appellant.

Gregory J. Schmidt, Ruvelson & Kautzer, St. Paul, for respondent.

Considered and decided by FOLEY, P.J., and FORSBERG and CRIPPEN, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

This appeal is from an order denying a retrial and from an amended judgment and decree of dissolution. We affirm in part and reverse in part.

## FACTS

Appellant Jeanine Anne Theroux, f.k.a. Jeanine T. Boehmler, and respondent James Herbert Boehmler, III were married in February 1971. Appellant had just received an undergraduate degree in textile and clothing design from Iowa State University. A few months later, respondent obtained his business degree from Iowa State. The parties thereafter moved to Minnesota, where respondent began his employment with 3M Company. Appellant worked for Donaldson's department store until September 1974, when the parties' first child was born. Since then, she has remained at home and has worked part time sewing and writing.

The parties separated in February 1985. Appellant remained in the family home with the parties' three children, then ages 10, 8, and almost 6 years old. Trial was held in January 1986. The parties stipulated that appellant would receive legal and physical custody of the children subject to respondent's right to reasonable visitation.

At trial, it was established that respondent's net monthly income as a business development supervisor with 3M was $2675.56. Appellant estimated that she had grossed about $7000 in 1985 and that she was currently working up to 20 hours per week as a consultant earning $10 an hour. She had returned to school part time, and anticipated receiving her masters degree in education within three years. Appellant testified that with such a degree she hoped to be able to earn a salary consistent with the standard of living established during the marriage.

In May 1986, the trial court issued its findings and conclusions, and the judgment and decree of dissolution was entered. Post-trial motions were made by both parties.

Prior to the date scheduled for the post-trial hearing, an order for protection was apparently issued restraining both parties from transferring property and excluding respondent from the family home for a period of one year.

Hearing was held on the post-trial motions in July 1986. An order amending the judgment and decree and denying retrial was thereafter issued, and an amended judgment and decree was entered. This appeal followed.

## ISSUE

1. Is appellant entitled to relief on issues pertaining to visitation, maintenance, classification of property, forgiveness of previous obligations and attorney's fees?

2. Did the trial court err in allowing the noncustodial parent to claim the federal dependency exemption absent a waiver of that right by the custodial parent?

## ANALYSIS

■ 1. Appellant contends that the amended visitation schedule fails to serve

the best interests of the children. Visitation must "enable the child and the noncustodial parent to maintain a child to parent relationship that will be in the best interests of the child." Minn.Stat. § 518.175, subd. 1 (1984). *See* Minn.Stat. § 518.175, subd. 5 (1984). Trial courts are accorded extensive discretion when deciding questions related to visitation. *Manthei v. Manthei*, 268 N.W.2d 45 (Minn.1978); *Halper v. Halper*, 348 N.W.2d 360, 363 (Minn. Ct.App.1984). *See also Funari v. Funari*, 388 N.W.2d 751, 753 (Minn.Ct.App.1986) (insubstantial modification of visitation schedule within trial court's discretion).

■ The amendments adopted by the trial court in this case result in a more detailed and definite visitation schedule, and require respondent to give advance notice of any changes. As such, the schedule serves the children's best interests by avoiding future miscommunication between the parties. The amended schedule further addresses appellant's own objections by allowing respondent more time with the children (even though his weekend visits are somewhat shortened) and by correspondingly allowing her to devote more time to her studies and part time employment. The trial court did not abuse its discretion in making these amendments.

■ 2. Appellant contends that the trial court's findings regarding the amount and duration of maintenance are unsupported by the evidence and fail to consider the factors set out in Minn.Stat. § 518.552, subd. 2 (Supp.1985). We disagree. The trial court considered the necessary statutory factors and balanced the financial needs of appellant and her ability to meet those needs against respondent's financial condition. *See Haasken v. Haasken*, 396 N.W.2d 253, 259 (Minn.Ct.App.1986); *Griepp v. Griepp*, 381 N.W.2d 865, 869 (Minn.Ct.App.1986).

The duration and amount of maintenance awarded is further supported by appellant's own testimony. At trial in January 1986, she sought temporary spousal maintenance until she finished her degree in two and one-half to three years in an amount reflecting the difference between her household expenses of $1700–1800 and child support of $936. She indicated that she hoped to pay for her graduate education through student loans and grants, and expressly stated that she was *not* seeking maintenance to cover her educational expenses. Under the terms of the original judgment and decree, appellant was awarded maintenance of $200 per month commencing June 1986 with no set duration.

In her motion for amended findings, she requested that maintenance of $700 per month be awarded commencing June 1986 for a period of 48 months. In the amended judgment and decree, the trial court increased the maintenance award to $300 per month to commence November 1986 and continue through December 1988. Such an award will enable appellant to meet her expenses (given her ability to work part time and earn $300 to $400 per month) and to complete her education.

■ 3. Appellant challenges the trial court's authority to order her to execute a joint tax return for 1985. Evidence presented by repondent established that if joint returns were not filed, he would incur an additional tax burden of $5000 to $6000. Given this, we conclude that it was within the trial court's discretion and authority to require appellant to file a joint tax return in order to avoid an unnecessary tax burden which would deplete funds available for the support of the family. *Compare Hedelius v. Hedelius*, 361 N.W.2d 421, 424 (Minn.Ct.App.1985) (trial court properly declined to order ex-husband to amend tax return and file jointly where evidence of tax savings presented by ex-wife was speculative and where ex-wife was one who elected to file separately in the first instance).

4. Appellant contends that the trial court erred in ordering repayment of a $28,000 loan owed to respondent's parents out of proceeds from the sale of the home. She insists that the loan was forgiven.

■ Respondent admits that his father did originally intend to forgive the loan, but that he never actually did and had no intention to do so now. Respondent fur-

ther testified that he believed his father would agree to wait until the home is sold to obtain his money and the accrued interest payments. Given this evidence, it was entirely proper for the trial court to treat the debt as marital and order its repayment when the home is sold. *Compare Moon v. Moon*, 378 N.W.2d 49, 53–54 (Minn.Ct.App. 1985) (where forgiveness of loan by appellant's parents intended as gift to appellant, value of loan properly treated as nonmarital interest in homestead).

5. Appellant challenges the trial court's characterization of a future interest in certain farm land in Iowa as nonmarital property. Respondent acquired this interest when his father (who had inherited the land subject to a life estate) executed a disclaimer in favor of his three children and informed his children of this disclaimer in a letter addressed to them.

■ Appellant claims that the land was given to her also, as evidenced by a Christmas letter addressed to the parties from respondent's mother (which states that an inheritance tax on the land had been paid on behalf of the parties) and by her inclusion in conversations with respondent's parents regarding the land. We disagree. This future interest was properly characterized as nonmarital, or as property acquired as a gift or inheritance from a third party to one spouse but not the other. Minn.Stat. § 518.54, subd. 5(a) (1984).

6. Appellant contends that the trial court erred in its valuation and division of personal property. We disagree. The trial court adopted reasonable values and attempted to honor both parties' requests. It managed to achieve an equitable property division, one well within its discretion and supported by credible evidence. Minn.Stat. § 518.58 (1984); *Reck v. Reck*, 346 N.W.2d 675, 677–78 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. April 25, 1984).

■ 7. An order for temporary relief may be "modified by the court before the final disposition of the proceeding upon the same grounds and subject to the same requirements as the initial granting of the order." Minn.Stat. § 518.131, subd. 9(b)

(1984). Appellant contends that the trial court improperly forgave obligations imposed upon respondent by the temporary order, including a $600 maintenance payment and $143 for auto insurance premiums. Forgiveness of these amounts was within the trial court's discretion based on evidence of respondent's inability to obtain additional financing and his inability to pay. *See Laumann v. Laumann*, 400 N.W.2d 355, 360 (Minn.Ct.App.1987).

■ 8. Attorney's fees may be awarded to enable a party to carry on a dissolution proceeding after considering the financial resources of both parties. Minn.Stat. § 518.14 (1984). Appellant challenges the trial court's award of $2,000 in attorney's fees as inadequate, as improperly including the $350 award under the temporary order, and as improperly allowing respondent two years to repay interest free. She requests an award of $3,350 to be paid within 60 days.

■ Given the parties' respective debts and the lack of liquid assets, the trial court's failure to award appellant all of her attorney's fees was not an abuse of discretion. *See Rosenberg v. Rosenberg*, 379 N.W.2d 580, 587 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. Feb. 19, 1986), *appeal after remand*, 402 N.W.2d 830 (Minn. Ct.App.1987), *pet. for rev. denied*, (Minn. May 28, 1987).

We decline to award attorney's fees to either party on appeal. *See Levine v. Levine*, 401 N.W.2d 132, 136 (Minn.Ct.App. 1987).

9. Despite appellant's request for deletion, the following language of the original judgment and decree was retained in the amended judgment and decree:

**Tax exemption.** That for so long as Respondent is current in his payments of child support Respondent shall be entitled to claim the children of the parties as exemptions on his state and federal income tax.

Appellant argues that under current federal law, the trial court had no authority to allocate these exemptions to respondent.

Prior to January 1, 1985, federal law clearly authorized state courts to allocate the dependency exemption to the noncustodial parent. 26 U.S.C. § 152(e) (1982). *See also Greeler v. Greeler*, 368 N.W.2d 2, 4–5 (Minn.Ct.App.1985). Under the Tax Reform Act of 1984, however, the custodial parent is automatically entitled to claim the children as income tax deductions *unless* he or she signs a waiver of those exemptions. 26 U.S.C. § 152(e) (Supp.1986).

Several cases from this court have dealt with the current version of § 152(e). In *Fudenberg v. Molstad*, 390 N.W.2d 19 (Minn.Ct.App.1986), this court examined the legislative history behind the change in § 152(e) and concluded:

> It appears from the legislative history that Congress was most concerned with alleviating the burden on the IRS caused by factfinding determinations. Under the old law, the question of how much support had been provided by each parent was a fact question that had to be resolved by the IRS when the parents could not agree and each sought to claim the exemption. Under the new law, the IRS no longer needs to be concerned with these fact questions. The only questions are which parent is the custodial parent, and whether he or she has waived the right to claim the exemption.

*Id.* at 21.

Determining that state court allocation of the exemption does not interfere with this Congressional intent, this court in *Fudenberg* reversed the trial court's determination that the referee had made an error of law by allocating the dependency exemption to the noncustodial parent; the portion of the referee's order requiring the custodial parent to execute a waiver of the exemption was reinstated. This was done under the facts of *Fudenberg* because the court deemed it necessary to invoke its equitable powers to require a waiver to safeguard the economic well-being of the family. In any event, where waiver is required it should be contingent upon receipt of support payments. *Id.* at 21.

In a more recent case, this court concluded that the trial court had ignored the express language of § 152(e) when it determined that the custodial and noncustodial parent were entitled to the dependency exemption in alternating years. *Gerardy v. Gerardy*, 406 N.W.2d 10 (Minn.Ct.App. 1987).

We find no inconsistency between these two decisions. Here, no issue as to waiver is involved and the record is clear that the trial court did not require a waiver. When waiver is not involved, federal law must be strictly followed as in *Gerardy*. We therefore reverse that portion of the amended judgment and decree awarding the exemptions to respondent. When attempting to allocate exemptions, a trial court must follow federal law, which awards the exemption to the custodial parent unless there is a clear waiver of that right by the custodial parent.

10. Following an incident in which respondent attempted to obtain some personal property from the family home, a domestic abuse hearing was apparently held before another trial judge and an order for protection was issued. In response to respondent's post-trial motion in this case, that order for protection was modified. Appellant contends that the trial court erred in modifying the domestic abuse order without taking any testimony or receiving additional evidence, and without having the file from that proceeding before it.

Because the record on appeal does not contain a transcript of the domestic abuse hearing or a copy of the order for protection, proper review cannot be conducted. We therefore decline to rule on this issue.

### DECISION

Affirmed in part, reversed in part.