BARBARA E. JENSEN, Appellant, v. DONALD L. JENSEN, and JENSEN ENTERPRISES, INC., a Nevada Corporation, Respondents.

No. 17919

April 28, 1988                                      753 P.2d 342

*George E. Graziadei* and *Scott Michael Cantor,* Las Vegas, for Appellant.

*Dickerson, Dickerson & Lieberman,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

### The Facts

Barbara and Donald were married in September 1981. On the day of their marriage, they signed an antenuptial agreement (hereafter "Agreement"), designed to keep their income and property separate after marriage. Soon after marriage, Barbara decided she wanted to work, and in May, 1982, pursuant to an informal arrangement, she began working for Jensen Precast, Donald's company.[1] For about three years she worked part-time, mostly trying to speed up or enforce collections.

---

[1] Donald is the sole officer, director and shareholder of this corporation.

Donald and his accountant testified that, about one year after Barbara began work, she and Donald agreed Jensen Precast would not pay her a separate salary, but her income would be included in Donald's income. Donald and his accountant testified that Barbara agreed to this means of compensation so Jensen Precast would not have to pay separate payroll taxes for her wages. Throughout the marriage thereafter, Donald deposited this income into the couple's joint checking account, and it was used to pay community expenses.

Barbara filed for divorce in September, 1986, and the district court filed the decree in October. The court awarded Barbara primary physical custody of their child, Megan; Donald was ordered to pay $500 a month child support, maintain health insurance for Megan, and designate her as beneficiary for a $50,000 life insurance policy. Barbara was ordered to execute documents, on a yearly basis, allowing Donald to claim the exemption for Megan on his income tax returns.

## Discussion

Barbara argues that Jensen Precast owes her $83,040 for work she performed. The lower court concluded that Jensen Precast had not agreed to compensate Barbara for her work and therefore was not liable to her. We agree with the lower court's conclusion that Jensen Precast is not liable for the compensation Barbara seeks.

The district court, in denying liability, found:

> There was never a meeting of the minds concerning employment of the Plaintiff with the Defendant Company and there is [sic] insufficient facts to be the basis for any contract, express or implied, or on a quantum meruit basis.

The court then concluded:

> There was no employment agreement, expressed or implied, between the Plaintiff and Defendant, Jensen Enterprises, Inc., nor was there any other basis for claiming entitlement to compensation from Jensen Enterprises, Inc., including quantum meruit.

Barbara argues that this finding is not supported by the record. However, even assuming that the district court's finding is not supported by substantial evidence and Jensen Precast did agree to compensate Barbara for her work, the record contains substantial evidence that Jensen Precast fully compensated Barbara, as agreed. As noted, both the company accountant and Donald testified Barbara agreed that during the time she worked for Precast her compensation would be lumped with Donald's. From

1982 to 1984, Precast paid Donald at least $330,000;[2] this income was deposited in the joint account and used by both parties to pay community expenses.

Barbara argues this arrangement violates the terms of their antenuptial agreement, which requires her income be treated as separate property. However, the Agreement expressly provided that its terms could be changed.[3] We have noted that parties to a written contract who agree to new terms may orally modify the contract. Joseph F. Sanson Inv. Co. v. Cleland, 97 Nev. 141, 142, 625 P.2d 566, 567 (1981).[4] Moreover, parties' consent to modification can be implied from conduct consistent with the asserted modification. Clark County Sports Enter. v. City of Las Vegas, 96 Nev. 167, 171, 606 P.2d 171, 175 (1980).

The record clearly suggests that, after the Agreement had been entered, both Barbara and Donald elected to treat their separate income as community property. By Barbara's post-Agreement oral consent to combine income, her acquiescence in allowing the income to be deposited in their joint checking account, her willingness to use the funds for community expenses, and her failure to demand, at any time before the divorce, a separate salary or income, Barbara, like Donald, obviously agreed to modify the Agreement and thereafter treat her income, like Donald's, as community property.[5] Therefore, even assuming

---

[2] In 1982, Precast paid Donald $121,500; in 1983, it paid Donald $60,800; in 1984, it paid Donald $148,000.

[3] The Agreement stated:

It is the purpose of this paragraph that no community property arise out of the marriage relationship *absent some subsequent agreement* between the parties to the contrary, all amounts earned through the efforts of the individuals during their marriage shall be the separate property of the individual expending the effort or financial resources. (Emphasis added).

The Agreement did not require any subsequent modifications to be in writing.

[4] Parol evidence can be admitted to show an oral agreement modifying a contract. Silver Dollar Club v. Cosgriff Neon Co., 80 Nev. 108, 110, 389 P.2d 923, 924 (1964).

[5] Normally, in order to modify a contract, both parties must provide consideration. J. Calamari & J. Perillo, *Contracts* 262 (3d ed. 1987). In this case, as consideration for the modification, Barbara gave up the right to have her income treated as separate property, and Donald agreed (1) to allow her to continue work for Jensen Precast and (2) to continue to treat his income as community property, rather than separate property.

arguendo that the lower court erroneously concluded no compensation agreement existed,[6] the record supports a conclusion that Barbara was fully compensated, as agreed, for her part-time work for Precast.

Barbara also argues that the lower court exceeded its jurisdiction by ordering her to execute documentation allowing Donald to claim an income tax exemption for their child. Although the court awarded Barbara primary physical custody of their daughter Megan, it ordered Barbara to execute, on a yearly basis, the forms necessary for Donald to claim a tax exemption for Megan as a dependent, if his $500 monthly payments were timely.

Normally, the custodial parent is entitled to claim the exemption, unless this parent waives the right. I.R.C. § 152(e). And coercive equitable relief is appropriate only when a legal remedy is inadequate. *See* Leftwich v. Leftwich, 442 A.2d 139 (D.C. 1982) (spouse improperly ordered to sign joint income tax return). In this case, the lower court could have achieved a similar economic result, as a matter of law, by merely adjusting the amount of alimony Donald would have to pay Barbara; the more extreme remedy of coercive equitable relief was inappropriate. Therefore, although we affirm the district court's award of $500 a month child support, we reverse the district court's order insofar as it requires Barbara to execute the tax forms necessary for Donald to claim the exemption. We do not remand, however, as further adjustment of the court's judgment is unnecessary.

Finally, Barbara contends that the district court abused its discretion in dividing the couple's community property and erred by finding Donald did not commingle community property with his own separate property. We have often noted that we will disturb a district court's equitable distribution of community property on appeal only if the court abuses its broad discretion. Shick v. Shick, 97 Nev. 352, 354, 630 P.2d 1220, 1221 (1981). And, a district court's factual determinations will be disturbed

---

[6]The lower court's conclusion that no compensation agreement was reached by Barbara and Jensen Precast might also be supported by substantial evidence. For example, Barbara testified that the parties did not expressly agree about the manner or amount of compensation:

> [E]ven prior to my going to work, we did not discuss salary. You know, giving me one or not per se. We had in fact even discussed the possibility of me down the road returning and going to law school or something, having, you know, a career of my own kind of thing. Or he even offered at one point to help me set up a business of my own and to finance it and work with me on an individual business. That would be mine.

only when unsupported by substantial evidence. Johnson v. Johnson, 89 Nev. 244, 246, 510 P.2d 625, 626 (1973) (citation omitted). In this case, there is substantial evidence on record to support both the district court's findings of fact and equitable division. Therefore, after consideration of the parties' arguments and the law, we accordingly affirm the district court's decision as modified herein.