YOUNG v YOUNG

Docket No. 112325. Submitted December 12, 1989, at Detroit. Decided
    March 19, 1990.

Michael E. Young sought a divorce from Judith E. Young. The
    April 9, 1984, judgment of divorce of the Macomb Circuit Court
    granted custody of the two children of the marriage to defen-
    dant, ordered plaintiff to pay child support and granted plain-
    tiff the federal and state income tax exemptions for the chil-
    dren. In March, 1988, defendant filed a motion to increase child
    support payments and to transfer the tax exemptions for the
    children from plaintiff to defendant. Following stipulations and
    a hearing, the trial court, Michael D. Schwartz, J., entered an
    order transferring the tax exemption for the younger child
    from noncustodial plaintiff to custodial defendant, but leaving
    unchanged the right of plaintiff to claim the tax exemption for
    the older child. Plaintiff appealed, arguing that the trial court
    lacked the authority to modify the provision of the judgment of
    divorce relating to federal and state tax exemptions.

    The Court of Appeals *held:*

    One of the provisions of the 1984 amendment of the Internal
    Revenue Code clearly empowers a state court to modify a pre-
    1985 divorce judgment provision which awarded to the noncus-
    todial parent the right to claim the federal income tax exemp-
    tion for a child to provide that such right to claim the exemp-
    tion shall be in the custodial parent. Because there is that
    specific provision in the Internal Revenue Code, it is unneces-
    sary to address the broader question of whether state courts
    retain the authority to make or modify an award respecting the
    claiming of federal income tax exemptions under other circum-
    stances.

    Affirmed.

    SAWYER, J., concurred. While he agreed with the result
    reached by the majority, he would reach that result on the

REFERENCES

Am Jur 2d, Divorce and Separation §§ 1078, 1084.
See the Index to Annotations under Custody and Support of Chil-
    dren; Income Tax.

basis that state courts continue to have the authority to award federal income tax dependency exemptions.

Divorce — Child Support — Income Tax — Dependency Exemptions — Circuit Courts.

   A Michigan circuit court has the power to modify a divorce judgment entered prior to January 1, 1985, which provided that the noncustodial parent would be able to claim the state and federal income tax dependency exemption for each child to provide that such exemption shall be taken by the custodial parent.

*John J. Grech & Associates, P.C.* (by *Kenneth A. Skuzenski*), for plaintiff.

*Jerry W. Drowns,* for defendant.

Before: Griffin, P.J., and Gillis and Sawyer, JJ.

Griffin, P.J. Plaintiff appeals as of right from an order modifying an April 9, 1984, judgment of divorce. The 1984 divorce judgment had granted plaintiff, the noncustodial parent, the federal and state income tax exemptions for the parties' two minor children.

In March of 1988, defendant, the custodial parent, filed a motion for an increase in child support which also requested transfer of the income tax exemptions from plaintiff to defendant. Following a stipulation by the parties as to child support and child care expense levels, the lower court ordered a hearing as to the request for modification of the tax exemptions. Following the hearing, the lower court entered an order which transferred the tax exemptions for the youngest child from the noncustodial plaintiff to the custodial defendant. The tax exemptions as to the oldest child in favor of the plaintiff remained unchanged.

Plaintiff appeals arguing that federal and state

law divest the circuit court of authority to so modify a pre-1985 divorce judgment. We disagree.

The divorce judgment in the instant case qualifies as a "qualified pre-1985 instrument" under § 152(e) of the Internal Revenue Code [26 USC 152(e)]:

> (B) Qualified pre-1985 instrument. For purposes of this paragraph, the term "qualified pre-1985 instrument" means any decree of divorce or separate maintenance or written agreement
> (i) which is executed before January 1, 1985,
> (ii) which on such date contains the provision described in subparagraph (A)(i), and
> (iii) which is not modified on or after such date in a modification which expressly provides that this paragraph shall not apply to such decree or agreement.

The present divorce decree was entered before January 1, 1985, and provides that the noncustodial parent (plaintiff) shall be entitled to federal and state tax exemptions for the parties' children. It is undisputed that the noncustodial parent (plaintiff) provided at least $600 for the support of each child during the calendar year.

The tax provision at issue requires a pre-1985 divorce judgment to have specifically awarded the dependency exemptions and recognizes only subsequent modifications which are consistent with the act. We construe the operative language to hold that a noncustodial parent may lose his or her exemption under a "qualified pre-1985 instrument" through subsequent modification, but that the noncustodial parent cannot gain an exemption by attempting to transform a nonqualified divorce judgment into a "qualified pre-1985 instrument." As stated in Baron, *Modification of Divorce Decrees by Virtue of the 1984 Tax Amendments*

*Relating to Dependency Exemptions,* 8 U Ark
Little Rock LJ 683, 686-687 (1985):

> The new tax provisions make clear that a "qual-
> ified pre-1985 instrument" must have specifically
> provided for the allocation of the dependency ex-
> emption as of January 1, 1985, recognizing only
> subsequent modifications which may serve to re-
> move a pre-1985 instrument from the status of
> being qualified. In other words, a noncustodial
> parent may lose his exemption under a "qualified
> pre-1985 instrument" (if he or she had one)
> through modifications but the noncustodial parent
> cannot gain an exemption by attempting to con-
> vert an existing nonqualified instrument into a
> "qualified pre-1985 instrument" through modifica-
> tion.

In the instant case, a "qualified pre-1985 instru-
ment" was modified to transfer tax exemptions
from a *noncustodial* parent to a *custodial* parent.
For the reasons stated, we hold that such a modifi-
cation is not proscribed by either the Internal
Revenue Code or state law.

Finally, at this time we choose not to revisit our
holdings in *Stickradt v Stickradt,* 156 Mich App
141; 401 NW2d 256 (1986), *Lorenz v Lorenz,* 166
Mich App 58; 419 NW2d 770 (1988), and *Varga v
Varga,* 173 Mich App 411; 434 NW2d 152 (1988),
as such decisions are clearly distinguishable.

Affirmed.

GILLIS, J., concurred.

SAWYER, J. *(concurring).* I concur.

While I do not necessarily disagree with the
majority's analysis concerning the modifying of
pre-1985 orders, I do not believe we should resolve
this issue on the narrow grounds on which the
majority limits its analysis. Rather, I believe we

should resolve the larger issue which plaintiff puts before us, namely, whether the state courts continue to have the authority to award the federal tax dependency exemptions for the minor children in light of the 1984 amendments to the Internal Revenue Code. For the reasons expressed below, I conclude that the prior decisions of this Court, and in a few other states, have incorrectly analyzed this issue and that, contrary to those decisions, state courts continue to possess the authority to award the federal dependency exemptions. Thus, while I agree with the majority's disposition of the matter before us, I do so for different reasons.[1]

I

Plaintiff first argues that the trial court lacked the authority to modify the judgment of divorce with respect to the allocation of the federal tax exemptions for the children. I disagree. Plaintiff argues that he is entitled to both exemptions since they were awarded to him in the judgment of divorce, that the judgment constitutes a "qualified pre-1985 instrument" under 26 USC 152(e)(4) [Internal Revenue Code § 152(e)(4)], and that the trial court is without authority to modify the provisions of the judgment with respect to the exemption issue. While I agree with plaintiff with respect to

[1] While the majority apparently reserves the right to consider, in a future case, the correctness of the prior decisions of this Court in this area, I must take issue with one of the majority's observations. The majority states that "a noncustodial parent may lose his or her exemption under a 'qualified pre-1985 instrument' through subsequent modification, *but that the noncustodial parent cannot gain an exemption* by attempting to transform a nonqualified divorce judgment into a 'qualified pre-1985 instrument.'" *Ante,* at 645. (Emphasis added.) While this observation is correct under the majority's narrow analysis, it is not entirely correct under my interpretation of the 1984 amendment. Under my analysis, the trial court may continue to award the dependency exemptions to the noncustodial parent (though not under the label of a "qualified pre-1985 instrument").

the first two propositions,[2] plaintiff is incorrect as to the issue of the trial court's authority.

### A. A BRIEF HISTORY OF IRC § 152(e)

Prior to amendment in 1984, it was generally agreed that a state court had the authority, under IRC § 152(e)(2)(A), to allocate the dependency exemptions for the children to the noncustodial parent in a divorce matter, subject to the IRC's requirement that the noncustodial parent must pay at least $600 per year in child support in order to claim the exemption. See *Westerhof v Westerhof,* 137 Mich App 97, 103; 357 NW2d 820 (1984), and cases cited therein.

However, the Tax Reform Act of 1984 amended IRC § 152(e) and that section no longer makes explicit reference to a "decree of divorce or separate maintenance" as did IRC § 152(e)(2)(A) prior to amendment. Considerable debate has ensued amongst the various state appellate courts concerning whether the 1984 amendment divested the state courts of jurisdiction to allocate dependency exemptions in divorce proceedings. See McCarthy, *Who Gets Dependency Exemptions in a Divorce?,* 66 Mich B J 1028 (1987).

The instant dispute may be resolved by determining whether the state courts were divested of jurisdiction over the tax exemption issue by the 1984 amendment to IRC § 152(e). For the reasons discussed below, I conclude that the state courts continue to have the authority to allocate depen-

[2] Of course, the Internal Revenue Service and the federal courts are the final arbiters of whether the judgment constitutes a qualified pre-1985 instrument under IRC § 152(e)(4) and the IRS is undoubtedly uninterested in this Court's conclusions on the issue. However, for whatever our opinion is worth, I agree with plaintiff that, prior to the trial court's modification, plaintiff was entitled to claim the exemptions under the provisions of the IRC related to qualified pre-1985 instruments.

dency exemptions, subject to certain procedural restrictions.

## B. THE 1984 AMENDMENT

As noted above, the Tax Reform Act of 1984 amended IRC § 152(e) and established bright-line rules as to which parent may claim the dependency exemption for a child. Generally, the custodial parent gets the exemption. IRC § 152(e)(1). This general rule is subject to three exceptions. The first exception allows the noncustodial parent to claim the exemption where the custodial parent has released the exemption to the noncustodial parent by executing a written declaration "in such manner and form as the Secretary may by regulations prescribe," which the noncustodial parent must attach to his or her tax return each year.[3] IRC § 152(e)(2). The second exception is where a multiple support agreement is in place. IRC § 152(e)(3). The final exception is where the exemption is allocated in a qualified pre-1985 instrument which has not been modified to expressly provide "that this paragraph shall not apply to such decree or agreement." IRC § 152(e)(4).

Eliminated in the 1984 amendment was the provision that the noncustodial parent had to pay at least $600 per year per child in child support in order to claim an exemption when allocated to the noncustodial parent under a divorce decree or an agreement of the parties.[4] Also eliminated was the prior provision that the noncustodial parent was treated as having provided more than half a child's support, and thus entitled to the exemption,

---

[3] See IRS Form 8332, "Release of Claims To Exemption For Child of Divorced or Separated Parents."

[4] This requirement remains, however, for those persons claiming the exemption under a qualified pre-1985 agreement. IRC § 152(e)(4)(A)(ii).

where the noncustodial parent paid more than $1,200 per year per child in child support and the custodial parent did not clearly establish that he or she provided more for the support of the child than the noncustodial parent.

It is this later change which seems to have provided the greatest impetus to changing the provisions of IRC § 152(e). The IRS was becoming involved in a large number of disputes between divorced parents over which one contributed more to the child's support and, thus, which one was entitled to the exemption:

> The present rules governing the allocations of the dependency exemption are often subjective and present difficult problems of proof and substantiation. The Internal Revenue Service becomes involved in many disputes between parents who both claim the dependency exemption based on providing support over the applicable thresholds. The cost to the parties and the Government to resolve these disputes is relatively high and the Government generally has little tax revenue at stake in the outcome. The committee wishes to provide more certainty by allowing the custodial spouse the exemption unless that spouse waives his or her right to claim the exemption. Thus, dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service. [The Legislative History of the Deficit Reduction Act (PL 98-369) reported in HR Rep 98-432, part II, 98th Cong (2nd Sess) 3, reprinted in 1984 US Code Cong & Admin News 697, 1140.]

The 1984 amendment was enacted to address this problem. While various state courts have interpreted the purpose and effect of the 1984 amendment, they have reached differing results.

### C. THE "MICHIGAN RULE"

On March 5, 1986, Michigan became the first

state to address the issue whether the 1984 amendment had divested state courts of the authority to allocate the federal dependency exemptions. This Court, in *Stickradt v Stickradt,* 156 Mich App 141; 401 NW2d 256 (1986), concluded that the 1984 amendment had eliminated the state courts' authority to award the exemptions. However, the Court reached this conclusion without analysis and without citation to any authority beyond IRC § 152(e). That is, the Court merely stated the conclusion that the 1984 amendment divested the state courts of authority to award exemptions, without explaining the reasons for its conclusion. Subsequent decisions have followed *Stickradt,* though again without any meaningful analysis. See *Lorenz v Lorenz,* 166 Mich App 58; 419 NW2d 770 (1988), and *Varga v Varga,* 173 Mich App 411; 434 NW2d 152 (1988).[5]

Only five states besides Michigan adhere to the Michigan Rule and hold that state courts cannot award exemptions: Florida,[6] Missouri,[7] Oregon,[8] South Dakota[9] and Texas.[10] One additional state, Indiana, did follow the Michigan Rule in one opinion.[11] However, the Indiana Court of Appeals recently took a contrary position, adopting the

[5] *Lorenz, supra* at 61, n 1, did acknowledge contrary authority, but dismissed it out of hand in a footnote as "unpersuasive."

[6] *McKenzie v Kinsey,* 532 So 2d 98 (Fla App, 1988).

[7] *Echele v Echele,* 782 SW2d 430 (Mo App, 1989). However, it is not entirely clear whether the *Echele* court completely ruled out the process of ordering the custodial parent to execute a waiver. The court noted that the custodial parent had not signed a waiver, but did not affirmatively state she could not be ordered to do so. Rather, it stated that the trial court could not award the exemption to the noncustodial parent.

[8] *Gleason v Michlitsch,* 82 Or App 688; 728 P2d 965 (1986), *In re Marriage of Vinson,* 83 Or App 487; 732 P2d 79 (1987), and *In re Marriage of Nishimura,* 86 Or App 392; 738 P2d 1018 (1987).

[9] *Sarver v Dathe,* 439 NW2d 548 (SD, 1989), and *Brandriet v Larsen,* 442 NW2d 455 (SD, 1989).

[10] *Davis v Fair,* 707 SW2d 711 (Tex App, 1986).

[11] *In re Marriage of Davidson,* 540 NE2d 641 (Ind App, 1989).

Minnesota Rule.[12] The reasoning of the Florida
Court of Appeals in *McKenzie v Kinsey,* 532 So 2d
98 (Fla App, 1988), is fairly representative of the
view of those courts adhering to the Michigan
Rule. The court reasoned that state courts cannot
allocate federal tax exemptions because the Inter-
nal Revenue Code does not authorize the state
courts to require the execution of IRS Form 8332
(see *ante,* n 3). *McKenzie, supra* at 100, n 3.[13] In
*Sarver v Dathe,* 439 NW2d 548 (SD, 1989), the
South Dakota Supreme Court extended this rea-
soning and concluded that state courts cannot
award exemptions because to do so would violate
the Sixteenth Amendment and the Supremacy
Clause.[14]

The evolution of the Oregon Court of Appeals
position is somewhat interesting and merits discus-
sion. It initially addressed the issue in *Gleason v
Michlitsch,* 82 Or App 688; 728 P2d 965 (1986).
*Gleason,* however, involved an illegitimate child,
not a divorce. As the court noted, IRC § 152(e) only
applies to parents who were married at one time
and are now separated or divorced. *Gleason, supra*
at 692. The court did, however, suggest that there
is no authority to award exemptions under the
1984 amendment. *Id.* at 693, n 6. However, in *In
re Marriage of Vinson,* 83 Or App 487; 732 P2d 79
(1987), the court concluded that there was no
authority to award exemptions, citing *Gleason,
supra.* See also *In re Marriage of Nishimura,* 86
Or App 392; 738 P2d 1018 (1987).

None of these cases provide much analysis in

---

[12] *In re Marriage of Baker,* 550 NE2d 82 (Ind App, 1990).

[13] It is important to note, however, that Florida did not recognize
the authority of state courts to award tax exemptions even before the
1984 amendment. *McKenzie, supra* at 99, citing *Sumner v Tart,* 362
So 2d 344 (Fla App, 1978), and *Lang v Lang,* 252 So 2d 809 (Fla App,
1971).

[14] US Const, art VI, cl 2.

support of the conclusion that the state courts lack the authority to require the custodial parent to execute a release of the exemption. Rather, to the extent that they do analyze the issue, they merely state that explicit authorization in the statute would be necessary to grant the state courts the authority to do so.

### D. THE "MINNESOTA RULE"

The majority of states take a broader view of state court authority under IRC § 152(e). The Minnesota Court of Appeals led the way with its decision in *Fudenberg v Molstad,* 390 NW2d 19 (Minn App, 1986). The court noted that the purpose of the 1984 amendment was to ease the burden on the IRS in having to mediate disputes between parents over which one was entitled to claim their child's exemption. *Id.* at 21. The court further reasoned that state court involvement would not interfere with the congressional intent behind the 1984 amendment. *Id.* Accordingly, the court concluded that state courts could award the federal tax exemptions, but also noted that the award should be contingent upon receipt of the child-support payments. *Id.* The court has applied *Fudenberg* in a number of subsequent cases. See *Thesing v Thesing,* 390 NW2d 469 (Minn App, 1986); *Theroux v Boehmler,* 410 NW2d 354 (Minn App, 1987); *Biscoe v Biscoe,* 443 NW2d 221 (Minn App, 1989). See also *Gerardy v Gerardy,* 406 NW2d 10 (Minn App, 1987).[15]

The Minnesota Rule has been followed in at

---

[15] A casual reading of *Gerardy* suggests that the court concluded that the exemption is not awardable. However, the court in *Theroux, supra,* reconciles *Gerardy* with *Fudenberg, supra,* by noting that *Gerardy* did not involve an issue of the execution of a waiver. Thus, since the trial court in *Gerardy* did not require the execution of Form 8332, the exemption would go to the custodial parent under IRC § 152(e). *Theroux, supra* at 358. Thus, *Gerardy* would presumably

least twenty other states: Arizona,[16] Colorado,[17] Connecticut,[18] Idaho,[19] Illinois,[20] Kentucky,[21] Louisiana,[22] Maryland,[23] Massachusetts,[24] Mississippi,[25] Montana,[26] New Jersey,[27] New York,[28] North Dakota,[29] Ohio,[30] Tennessee,[31] Utah,[32] Washington,[33]

---

have been decided differently had the trial court in that case required the execution of Form 8332, rather than merely awarding the exemption. This conclusion is supported by the fact that the author of *Fudenberg, supra,* Judge Sedgwick, was also a member of the *Gerardy* panel.

[16] *Lincoln v Lincoln,* 155 Ariz App 272; 746 P2d 13 (1987).

[17] *In re Marriage of Beyer,* — P2d — (Colo App, 1989).

[18] *Serrano v Serrano,* 213 Conn 1; 566 A2d 413 (1989).

[19] *Rohr v Rohr,* — Idaho App —; — P2d — (1989).

[20] *In re Marriage of Einhorn,* 178 Ill App 3d 212; 127 Ill Dec 411; 533 NE2d 29 (1988). But see *In re Marriage of Emery,* 179 Ill App 3d 744; 128 Ill Dec 569; 534 NE2d 1014 (1989), which held that the court has no authority to award exemptions, citing *Theroux, supra.* However, as discussed above, *Theroux* follows the view that exemptions are awardable so long as the trial court does so by requiring the execution of the IRS form. It is not clear from the *Emery* opinion whether the appellate court disapproved of the trial court's action because it did so without requiring the execution of a waiver (as was the case in *Theroux*) or because it misread *Theroux* as holding that the state courts were without any authority to award the exemptions under any circumstances. Furthermore, *Emery* failed to consider the court's earlier decision in *Einhorn, supra.* Moreover, *Einhorn* was followed subsequent to *Emery* in *In re Marriage of Van Ooteghem,* 187 Ill App 3d 696; 135 Ill Dec 331; 543 NE2d 899 (1989), and *In re Marriage of McGarrity,* 191 Ill App 3d 501; 138 Ill Dec 906; 548 NE2d 136 (1989). Accordingly, I conclude that *Einhorn* represents the more accurate view of the position of the Illinois courts on this issue.

[21] *Hart v Hart,* 774 SW2d 455 (Ky App, 1989).

[22] *Rovira v Rovira,* 550 So 2d 1237 (La App, 1989).

[23] *Wassif v Wassif,* 77 Md App 750; 551 A2d 935 (1989).

[24] *Bailey v Bailey,* 27 Mass App 502; 540 NE2d 187 (1989).

[25] *Nichols v Tedder,* 547 So 2d 766 (Miss, 1989).

[26] *In re Marriage of Milesnick,* — Mont —; 765 P2d 751 (1988).

[27] *Gwodz v Gwodz,* 234 NJ Super 56; 560 A2d 85 (1989).

[28] *Sheehan v Sheehan,* — AD2d —; 543 NYS2d 827 (1989).

[29] *Fleck v Fleck,* 427 NW2d 355 (ND, 1988), and *McKenzie v Jahnke,* 432 NW2d 556 (ND, 1988).

[30] *Hughes v Hughes,* 35 Ohio St 3d 165; 518 NE2d 1213 (1988), and *Hodges v Hodges,* 43 Ohio App 3d 113; 539 NE2d 709 (1988).

[31] *Hooper v Hooper,* unpublished authored opinion of the Tennessee Court of Appeals (Docket No. CA1130), decided February 9, 1988.

West Virginia[34] and Wisconsin.[35] Additionally, as noted above, Indiana has recently changed its position and now follows the Minnesota Rule.[36] These opinions need not all be analyzed at length. However, some do merit special consideration.

The West Virginia Court of Appeals wrote what may be the best analysis of this issue in *Cross v Cross*, 363 SE2d 449 (W Va, 1987). Accordingly, I take the liberty of quoting from that opinion at length:

> The commentators indicate that the purpose of the 1984 amendment to IRC § 152(e) was to remove from the Internal Revenue Service the burden of resolving numerous factual disputes between divorced parents over the issue of who actually provides more support for the child. Such disputes arose when, under the previous law, the noncustodial parent paid more than $1,200 yearly as support. Under the amended IRC § 152(e), the criteria to be followed by the IRS is much more objective—the custodial parent always gets the exemption unless he or she has assigned it to the non-custodial parent through a written declaration on an official IRS form. Thus, under the new IRC § 152(e), a court order standing alone—without the necessary IRS waiver form—is ineffective to transfer the dependency exemption.
>
> Contrary to the legislative history of the amended IRC § 152(e), Mrs. Cross maintains that the 1984 version of IRC § 152(e) was designed to confer, by federal law, a collateral financial benefit

---

[32] *Motes v Motes,* 786 P2d 232 (Utah App, 1989); but see *Fullmer v Fullmer,* 761 P2d 942 (Utah App, 1988), and *Martinez v Martinez,* 754 P2d 69 (Utah App, 1988). However, *Motes* distinguished *Fullmer* and *Martinez* on the basis of the fact that neither of those cases involved an order by the trial court for the custodial parent to execute a waiver.

[33] *In re Marriage of Peacock,* 54 Wash App 12; 771 P2d 767 (1989).

[34] *Cross v Cross,* 363 SE2d 449 (W Va, 1987).

[35] *Pergolski v Pergolski,* 143 Wis App 2d 166; 420 NW2d 414 (1988).

[36] See n 12, *ante.*

upon the custodial parent. Nothing, however, could be farther from the truth. What the new Code section sought to achieve was certainty in the allocation of the dependency exemption *for federal tax administration purposes.* By placing the dependency exemption in the custodial parent unless a waiver is executed, the new statute relieves the Internal Revenue Service of litigation. The new statute is entirely silent concerning whether a domestic court can *require* a custodial parent to execute a waiver, and this silence demonstrates Congress's surpassing indifference to how the exemption is allocated as long as the IRS doesn't have to do the allocating. [*Cross, supra* at 457-458; emphasis in original.]

The *Cross* court went on to discuss the Texas Court of Appeals decision in *Davis v Fair,* 707 SW2d 711 (Tex App, 1986), and strongly rejected the Texas court's reasoning:

*Davis v Fair,* is an extremely formalistic opinion that strains at a gnat but swallows a camel. The *Davis* court held that the trial court could adjust child support to reflect the lost value of the dependency exemption, but could not allocate the exemption to the non-custodial parent because there was no express authority in the Internal Revenue Code allowing it.

Indeed, under the new IRC § 152(e) a state court does not have the power to allocate the exemption simply by court order alone (as it could have done before the 1984 Amendment), but it does have the equitable power to require the custodial parent to sign the waiver. In this regard, what the *Davis* court missed is that there is *no prohibition*—express or implied—on a state court's requiring the execution of the waiver, and because state court allocation of dependency exemptions has been custom and usage for decades, it is more reasonable than not to infer that if Congress had intended to forbid state courts from allocating the exemption

by requiring the waiver to be signed, Congress would have said so. In this regard it is interesting to note that Texas was the one state that discouraged court-ordered allocation of the exemption under the old law.[37] *See,* R.M. Baron, [*Modification of Divorce Decrees by Virtue of the 1984 Tax Amendment Relating to Dependency Exemptions,* 8 U Ark Little Rock L J 683 (1985)].

Thus, we arrive at a conclusion diametrically opposed to *Davis v Fair, supra,* because we find nothing in the 1984 amendment to IRC § 152(e) that precludes a power in our trial courts to award the dependency tax exemption as an integral part of setting child support *by ordering the custodial parent to execute the waiver* required by the IRC. In this regard, the U.S. Supreme Court has articulated two tests for determining whether there is a conflict between a federal statute and state law. The first of these tests provides that a conflict exists when "compliance with both federal and state regulations is a physical impossibility . . ." *Florida Lime & Avocado Growers, Inc v Paul,* [373 US 132; 83 S Ct 1210; 10 L Ed 2d 248] (1963). The second test provides that a conflict will be found when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v Davidowitz,* [312 US 52; 61 S Ct 399; 85 L Ed 581] (1941).

Our holding today concerning a court's power to order a custodial parent to waive the dependency exemption meets both tests. IRC § 152(e) seeks only certainty; it requires a waiver to allocate the dependency exemption to the non-custodial parent and a court-ordered waiver is as acceptable as any other. The second test relating to congressional intent is also met: the amended IRC § 152(e) is designed to ease the IRS's administrative burden and not to rearrange economic benefits between divorced parents. [*Cross, supra* at 458-459; emphasis in original.]

---

[37] But see *McKenzie v Kinsey, supra* at 99, which indicates that Florida also never recognized the authority to award exemptions.

The court then went on to consider the practical
effects of its holding:

> In a peculiar way, perhaps, *Davis v Fair, supra,*
> is squarely on point. In *Davis* the court held that
> although a trial judge could not allocate the de-
> pendency exemption, he could reduce child support
> to reflect the value of the dependency exemption.
> If that is so, a court can do indirectly what Mrs.
> Cross would have us prohibit a court from doing
> directly. Take away $100 a month from Mrs.
> Cross's child support payments and she'll gladly
> execute a waiver to have the $100 a month re-
> stored; in her tax bracket the dependency exemp-
> tion is nearly worthless.
>
> The facts of life are that income tax exemptions
> are valuable only to persons with income, and up
> to a certain point, the higher the income the more
> valuable exemptions become because of the pro-
> gressivity of the federal income tax. In this regard,
> it is to be remembered that the federal govern-
> ment is not providing every custodial parent with
> a cash grant under IRC § 152(e). Rather, IRC
> § 152(e) provides an economic benefit that is of
> significantly greater value to a parent with income
> than it is to a parent without income. Conse-
> quently, it seems only reasonable that a trial judge
> should allocate the dependency exemption to the
> parent in the highest tax bracket, and then en-
> hance (or reduce) the value of the cash child
> support payments to offset the value of the exemp-
> tion. . . . Certainly what can be done indirectly
> under any reading of the law by a circuit judge—
> namely, to adjust the award of child support de-
> pending on whether a waiver of the dependency
> exemption is made by the custodial parent, as in
> *Davis, supra,*—can be done directly. [*Cross, supra*
> at 459-460.]

The Washington Court of Appeals, in *In re
Marriage of Peacock,* 54 Wash App 12, —; 771 P2d
767, 768-769 (1989), while employing a similar analy-

sis as *Cross, supra,* also noted that domestic relations law is within state jurisdiction and that federal law will rarely be held to preempt state domestic relations law, citing *Wetmore v Markoe,* 196 US 68; 25 S Ct 172; 49 L Ed 390 (1904), and *United States v Yazell,* 382 US 341; 86 S Ct 500; 15 L Ed 2d 404 (1966). Similarly, the Connecticut Supreme Court noted that domestic relations law is a state concern and federal law requires preemption by direct enactment or where state law would do major damage to federal interests. *Serrano v Serrano,* 213 Conn 1, 6-7; 566 A2d 413 (1989).

The Tennessee Court of Appeals, in *Hooper v Hooper,* unpublished authored opinion (Docket No. CA1130, decided February 9, 1988), also noted that there is no constitutionally guaranteed right to an exemption which would prevent ordering the execution of IRS Form 8332. Furthermore, the court noted that IRC § 152(e) merely refers to a "written declaration" to be executed in a manner and form as the Secretary of the Treasury may prescribe. Thus, nothing in the terms of the statute itself requires that the execution of the waiver be voluntary or that it specifically derive from an agreement of the parties rather than an order of the state court.

### E. THE "NEVADA RULE"

One state, Nevada, cannot be easily classified into either category. In *Jensen v Jensen,* — Nev —; 753 P2d 342 (1988), the Nevada Supreme Court ruled that it was inappropriate to award the noncustodial father the income tax exemption. However, it did not base its holding on a conclusion that the trial court lacked the authority to award exemptions under IRC § 152(e)—the opinion was silent on this issue—but, rather, on the principle

that an adequate legal remedy existed, thus making the use of equitable power inappropriate. *Jensen, supra* at 345. That is, the court could have imposed a legal remedy of reducing the custodial parent's alimony award by the amount of the value of the exemption to the noncustodial parent to achieve the same result, without using the equitable power of requiring the execution of the waiver. *Id.* The court gave no hint as to what it would conclude if no adequate legal remedy had been available.

The Connecticut Supreme Court addressed this theory, though without specifically considering *Jensen, supra,* in *Serrano, supra.* Specifically, the court rejected the notion that an adequate legal remedy exists by revising the child-support obligation since (1) that would, in reality, be an equitable remedy, not a legal remedy, and (2) divorces are equitable actions and, therefore, the court can use its equitable powers as needed.

### F. DISCUSSION

I am convinced that the reasoning behind the Minnesota Rule, which is followed by the vast majority of appellate courts which have addressed the issue, represents the correct view. The time has come to abandon the Michigan Rule set forth in *Stickradt, supra,* and its progeny. Not only is the Minnesota Rule followed by at least twenty-one states, those states' appellate courts have developed a large body of articulate and thorough opinions which set forth in detail the reasons behind the conclusion that state courts may continue to allocate the dependency exemptions, subject to certain procedural restrictions. Not only is the Michigan Rule followed in only six states, none of the appellate decisions in those six states have

set forth any compelling reasons why state courts may not continue to allocate dependency exemptions. Those opinions have, at most, stated the conclusion that the 1984 amendment divested state courts of jurisdiction to allocate dependency exemptions with no analysis beyond pointing out that IRC § 152(e) does not specifically acknowledge state authority in this area.

As discussed above, a number of reasons exist in support of the conclusion that dependency exemptions may be awarded in a domestic relations action. First, there is no indication in the federal statute that Congress wished to deprive the state courts of authority in this area; had Congress wanted to do so, it would have explicitly said so. As the court in *Cross, supra* at 457, stated, Congress has "surpassing indifference to how the exemption is allocated as long as the IRS doesn't have to do the allocating." If this were not the case, Congress would have acted to amend IRC § 152(e) in the 3½ years since *Fudenberg, supra,* was decided and explicitly stated that the state courts were to take a "hands off" approach to the issue.

Second, it is not necessary to deprive state courts of the authority to award exemptions in order to achieve the congressional intent behind the amendment. Congress passed the amendment in order to relieve the IRS of the burden of having to mediate disputes between parents over who was entitled to the exemption for their child. Before the amendment, the IRS had little choice but to audit both parents' tax returns, consider supporting evidence, and determine which parent had spent more money supporting the child and was thus entitled to claim the dependency exemption for the child. So long as the state courts achieve its allocation by requiring the execution of IRS Form 8332, the objectives behind the amendment

are not hindered: the IRS will be able to allow the noncustodial parent to claim the exemption without having to become involved in a dispute between the parents.

I would further add on the issue of congressional intent that there is no indication that the 1984 amendment was passed for purposes of enhancing federal revenues. If Congress wished to stop the practice of transferring exemptions from custodial parents in lower income brackets to noncustodial parents in higher income brackets as a revenue enhancement mechanism, it would not have included IRC § 152(e)(2) to allow the release of the exemption to the noncustodial parent. This further indicates that Congress is not particularly concerned with which parent claims the exemption, but only with ensuring that the IRS does not become involved in disputes over which parent should claim the exemption.

Third, the allocation of the exemption from a custodial parent in a lower income tax bracket to the noncustodial parent in a higher income tax bracket has the effect of increasing the parents' combined after tax income. This increased income can be used to increase the child-support award without decreasing the noncustodial parent's net income. See *Nichols v Tedder,* 547 So 2d 766, 775 (Miss, 1989). Thus, with the appropriate allocation of the exemption and child-support award, the net income, after taxes and child support are taken into account, for both parents can be increased over what it would be without an allocation. *Id.* The *Nichols* court further noted that

> [t]o deny our trial courts the power to allocate the exemption gives the custodial parent the ability to punish the non-custodial parent by making the tax liability greater for the non-custodial parent; greater in fact than the savings the custodial

parent stands to gain from claiming the exemp-
tion. The only real winner in such a situation is
the federal government, while the real loser is the
child. [*Nichols, supra* at 775.]

Fourth, if the requirement of executing Form
8332 is made contingent upon full payment of
child support, as most of the courts have required,
the custodial parent is given an additional tool to
enforce the noncustodial parent's support obliga-
tion. However, I do not believe it appropriate to
require such a provision, as some appellate courts
have done. Rather, this issue should be left to the
trial court's discretion and it may include such a
provision where it deems it appropriate.

Finally, I am unpersuaded by the reasoning of
the courts adhering to the Michigan Rule. As
*Cross, supra,* and other cases have pointed out, the
fact that there is no explicit provision in the IRC
authorizing the state courts to allocate the exemp-
tions by requiring the execution of Form 8332 is
irrelevant. What is relevant is that such action by
the state courts is neither prohibited by the IRC
nor by principles of federal preemption.

Moreover, the conclusion that the same result
may be reached by adjusting the child-support
award is flawed. While this approach may yield
the same result in net income for the noncustodial
parent, it does not arrive at the same result for
the child support to be paid to the child. It must
be remembered that child support is paid for the
benefit of the child, not for the benefit of the
custodial parent. It, therefore, makes little sense
to reduce the child-support award, thus harming
the interests of the child, because the custodial
parent refuses to execute a waiver.

This latter point was commented upon in Mc-
Carthy, *supra* at 1029:

As Michigan law now stands, an impecunious custodial parent could refuse to release the tax exemption to a salaried noncustodial parent, even though the exemption would be of no benefit to him or her, and releasing the exemption would actually increase the child support payment by increasing the noncustodial parent's net income. The best interests of the children would not be served by wasting an asset, i.e., tax exemption, available for their support.

The interests of all concerned, including the child, can be better served by merely allocating the exemption and requiring the execution of the waiver.

### G. CONCLUSION

McCarthy, *supra,* politely suggested that this Court's decision in *Stickradt, supra,* was incorrectly decided and "that when Michigan appellate courts revisit this issue they may decide that the circuit court has jurisdiction to allocate tax exemptions in a divorce." McCarthy, *supra* at 1029. I agree.

Accordingly, I conclude that *Stickradt* and its progeny were incorrectly decided. For the reasons discussed above, I conclude that state courts continue to have the authority to allocate federal dependency exemptions in light of the 1984 amendment to IRC § 152(e). The amendment only restricts the procedures which the state court must employ to achieve allocation.

II

There remains, however, the determination of

how to apply this conclusion to the case at bar. The conclusion that the trial courts have the authority to allocate the dependency exemption necessitates the conclusion that the trial court in the instant case had the authority to modify the divorce judgment and transfer one of the two exemptions from plaintiff to defendant. Moreover, plaintiff does not argue on appeal that the trial court abused its discretion in transferring one of the exemptions to defendant. Rather, plaintiff limits his argument to the issue of the trial court's authority to modify the divorce judgment.

Since the parties limit their arguments to the issue of the trial court's authority, I will not determine whether the trial court erred in transferring one of the two exemptions to defendant. However, I will offer a few general principles to aid the trial courts in this area. Generally, the exemption should be awarded to the parent who is in the higher income tax bracket and, therefore, will realize the greatest benefit from the exemption and, by receiving the exemption, be able to provide further financial support to the child. Additionally, the court might wish to consider which parent contributes the greater amount to the child's support. Furthermore, as the court in *Motes v Motes*, 786 P2d 232 (Utah App, 1989), noted, the exemption should not be awarded to the noncustodial parent as a "consolation prize" for not receiving custody of the children. Similarly, where there are two or more exemptions available, the trial court should not merely divide the exemptions between the parents in an attempt to

achieve an equitable division as if dividing the household furnishings.[38]

In sum, the trial court will have to weigh any relevant factor present in each case and make an award which is in the best financial interests of all concerned, including the child. In the appropriate cases, by awarding the exemptions and adjusting support obligations, the trial court can achieve an increase in the net income (i.e., income after taxes and child support) of all concerned.

Accordingly, I conclude that the trial court did not err in modifying the judgment of divorce to transfer one of the tax exemptions to defendant. However, it should be noted that there may be some question whether the trial court's modification of the judgment destroyed its status as a "qualified pre-1985 instrument." This question cannot be answered with any authority since this Court cannot enforce our decision against the IRS. While, in my opinion, the judgment remains a qualified pre-1985 instrument with respect to the exemption retained by plaintiff, the IRS may decide otherwise and we would be powerless to stop them. Accordingly, plaintiff may wish to confer with tax counsel and take the appropriate action, such as obtaining an IRS ruling, having defendant execute Form 8332 with respect to the exemption retained by plaintiff, or both.[39]

---

[38] This approach might be appropriate, however, where the parties are in the same tax bracket and, therefore, the benefit of the exemption would be the same to either party. Indeed, while it is not entirely clear, that may be the case here since the parties' incomes are similar, with defendant apparently having a net income of approximately $50 per week more than plaintiff according to the Friend of the Court's report. However, in any event the trial court would also, of course, have to consider any other relevant factor in making its decision.

[39] I do not suggest that defendant is required at this time to execute Form 8332. Since there are different restrictions on claiming exemptions under a pre-1985 instrument than under Form 8332, defendant

### III

For the above reasons, I conclude that the trial court possessed the authority to modify the divorce judgment and change the award of the dependency exemptions.

---

and the trial court may, or may not, prefer that plaintiff claim the exemption as being under a pre-1985 instrument, if this is acceptable to the IRS. Accordingly, if the parties disagree over whether Form 8332 should be executed, the trial court will have to resolve the dispute.