[No. 9250-0-III.   Division Three.   April 27, 1989.]

*In the Matter of the Marriage of* THOMAS A. PEACOCK,
*Respondent, and* DEBBIE A. PEACOCK,
*Appellant.*

*Evan Hull,* for appellant.

*Thomas A. Peacock,* pro se.

THOMPSON, C.J.—Debbie Drake (formerly Peacock) appeals the award to her former husband, Thomas Peacock, of the dependency exemption income tax deduction for their minor child.

The Peacocks' marriage was dissolved in a decree dated March 4, 1988. The decree awarded custody of the child to Ms. Drake, but awarded the federal tax exemption for the child to Mr. Peacock, on condition that he remain current in his child support payments.

The sole issue is whether the court properly awarded the exemption to Mr. Peacock. RCW 26.09.050 requires a court in entering a decree of dissolution to "make provision for the allocation of the children as federal tax exemptions . . ." However, the Internal Revenue Code, 26 U.S.C. § 152,

makes no provision for such a judicial allocation of the exemption. Generally under the tax code, the custodial parent is entitled to the dependency exemption. 26 U.S.C. § 152(e)(1). However, the noncustodial parent may claim the exemption if the custodial parent signs a written declaration stating she will not claim the exemption. 26 U.S.C. § 152(e)(2); *see* Comment, *Domestic Relations Tax Reform,* 20 Gonz. L. Rev. 251, 278 (1984–1985).

Ms. Drake argues that because she has not signed a release of her claim, she is entitled under federal law to the dependency exemption, and the court thus erred in awarding it to Mr. Peacock. If correct, this reasoning would deny the trial court any discretion in allocating the exemption pursuant to RCW 26.09.050.

Congressional intent is determinative in questions of federal preemption of state law. *Department of Labor & Indus. v. Common Carriers, Inc.,* 111 Wn.2d 586, 588, 762 P.2d 348 (1988):

> In Washington, there is a strong presumption against finding preemption. *Pioneer First Fed. Sav. & Loan Ass'n v. Pioneer Nat'l Bank,* 98 Wn.2d 853, 659 P.2d 481 (1983). Preemption may be found only if federal law "clearly evinces a congressional *intent* to preempt state law", or there is such a "'direct and positive'" conflict "that the two acts cannot 'be reconciled or consistently stand together' . . ." *Pioneer,* at 856–57 (quoting *State v. Williams,* 94 Wn.2d 531, 538, 617 P.2d 1012, 24 A.L.R. 4th 1191 (1980)).

██ Domestic relations is an area particularly within the authority of the states:

> Insofar as marriage is within temporal control, the States lay on the guiding hand. "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus,* 136 U. S. 586, 593–594 [34 L. Ed. 500, 10 S. Ct. 850, 853] (1890). Federal courts repeatedly have declined to assert jurisdiction over divorces that presented no federal question. See, *e. g., Ohio ex rel. Popovici v. Agler,* 280 U. S. 379 [74 L. Ed.

489, 50 S. Ct. 154] (1930). On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has "positively required by direct enactment" that state law be pre–empted. *Wetmore* v. *Markoe,* 196 U. S. 68, 77 [49 L. Ed. 390, 25 S. Ct. 172, 176] (1904). A mere conflict in words is not sufficient. State family and family–property law must do "major damage" to "clear and substantial" federal interests before the Supremacy Clause will demand that state law be overridden. *United States* v. *Yazell,* 382 U. S. 341, 352 [15 L. Ed. 2d 404, 86 S. Ct. 500] (1966).

*Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 59 L. Ed. 2d 1, 99 S. Ct. 802 (1979); *see McCarty v. McCarty,* 453 U.S. 210, 220, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981). The congressional purpose in enacting the recent tax code provision is evident from the following:

The present rules governing the allocations of the dependency exemption are often subjective and present difficult problems of proof and substantiation. The Internal Revenue Service becomes involved in many disputes between parents who both claim the dependency exemption based on providing support over the applicable thresholds. The cost to the parties and the Government to resolve these disputes is relatively high and the Government generally has little tax revenue at stake in the outcome. The committee wishes to provide more certainty by allowing the custodial spouse the exemption unless that spouse waives his or her right to claim the exemption. Thus, dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service.

H.R. Rep. No. 98–432, Part II, 98th Cong., 2d Sess. (1984), *reprinted in* 1984 U.S. Code Cong. & Ad. News 697, at 1140. As the West Virginia Supreme court has observed, this passage "demonstrates Congress's surpassing indifference to how the exemption is allocated as long as the IRS doesn't have to do the allocating". *Cross v. Cross,* 363 S.E. 2d 449, 457 (W. Va. 1987).

The congressional interest in administrative efficiency is in no way affected by state court allocation of the dependency exemption. Some state courts, most without much discussion, have refused to assume authority in this area. *See Lorenz v. Lorenz,* 166 Mich. App. 58, 419 N.W.2d 770, 771 (1988); *Theroux v. Boehmler,* 410 N.W.2d 354, 358 (Minn. Ct. App. 1987); *Gleason v. Michlitsch,* 82 Or. App. 688, 728 P.2d 965, 967 n.6 (1986); *State ex rel. Dryden v. Dryden,* 409 N.W.2d 648, 652 n.2 (S.D. 1987); *Davis v. Fair,* 707 S.W.2d 711, 714–17 (Tex. Ct. App. 1986); *Fullmer v. Fullmer,* 761 P.2d 942, 950 (Utah App. 1988). Others, however, have held state courts retain authority to allocate exemptions, most in recognition there is no conflict with federal interests. *See Lincoln v. Lincoln,* 155 Ariz. 272, 746 P.2d 13, 17 (Ct. App. 1987); *Fudenberg v. Molstad,* 390 N.W.2d 19 (Minn. Ct. App. 1986); *In re Marriage of Milesnick,* ___ Mont. ___, 765 P.2d 751, 753–54 (1988); *Fleck v. Fleck,* 427 N.W.2d 355, 359 (N.D. 1988); *Hughes v. Hughes,* 35 Ohio St. 3d 165, 518 N.E.2d 1213, 1215–16, *cert. denied,* ___ U.S. ___, 102 L. Ed. 2d 97, 109 S. Ct. 124 (1988); *Cross v. Cross,* 363 S.E.2d at 458–59; *Pergolski v. Pergolski,* 143 Wis. 2d 166, 420 N.W.2d 414, 417 (Ct. App. 1988).

We agree the federal tax provision does not preclude state involvement in this area. To conclude otherwise would be to allow federal tax policy to determine domestic relations issues in which the states have particular interest. RCW 26.09.050 is not preempted by federal law, and the court properly applied the statute here.

█ The next question is how to effectuate the court's allocation. A court order, standing alone, does not expressly satisfy the requirement of a written waiver of the exemption required by 26 U.S.C. § 152(e)(2). *See Wassif v. Wassif,* 77 Md. App. 750, 551 A.2d 935 (1989). Most courts that have considered this issue have held the allocation may be enforced by an order requiring the custodial parent to

execute the necessary waiver in favor of the parent who has been allocated the exemption. *See Lincoln; Wassif; Milesnick,* 765 P.2d at 754; *Fleck; Cross,* 363 S.E.2d at 458; *Pergolski. But see Varga v. Varga,* 173 Mich. App. 411, 434 N.W.2d 152 (1988); *Jensen v. Jensen,* __ Nev. __, 753 P.2d 342 (1988); *Hughes,* 518 N.E.2d at 1216.

In Washington, a court may issue an order directing a party to perform some act to effectuate the court's resolution of a dispute.

It is inconceivable that a court in a divorce proceeding can divide the property between the parties and yet have no power to make that division effective if the parties are recalcitrant. The rule is well stated in Nelson on Divorce and Annulment (2d ed.), Vol. II, 285, § 16.01, where it is said:

"To the extent that the court has the power to adjust the property rights of the parties, it can require that its mandates be carried out, either by act of the party or by directing the making of a conveyance by a representative of the court if the party fails or refuses to make it. This is a generally recognized power of a court invested with authority to deal with property rights and interests. It is commonly exercised to effectuate transfer of interests if the parties are recalcitrant; hence there is nothing peculiar to divorce litigation in its application, where necessary, to carry out what the court is empowered to do by way of adjustment of rights and interests."

If a court of equity could not enforce its decrees,

"'. . . obviously the court would be rendered impotent and we would have neither law nor order but everyone could do as he or she pleased. Of course, such a situation cannot be countenanced by the courts for a moment.'" *Tegtmeyer v. Tegtmeyer,* 292 Ill. App. 434, 443, 11 N.E. (2d) 657, 661 [(1937)], as quoted in *Brevet v. Brevet,* 316 Ill. App. 406, 45 N.E. (2d) 199 [(1942)].

*Robinson v. Robinson,* 37 Wn.2d 511, 516, 225 P.2d 411 (1950). We conclude the court here had authority to allocate the income tax exemption and, pursuant to its

allocation, order Ms. Drake to execute the waiver document. We remand this case for entry of such an order. Ms. Drake's request for attorney fees is denied.

GREEN and SHIELDS, JJ., concur.