IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of | ) | No. 40124-3-III |
| | ) | |
| MONA KELLEY | ) | |
| | ) | |
| Appellant, | ) | PUBLISHED OPINION |
| | ) | |
| and | ) | |
| | ) | |
| DONALD KELLEY | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, J. — Mona Hines appeals the dissolution court's denial of her motion for contempt brought against her ex-husband, Donald Kelley, for violating a provision in the dissolution decree that ordered Kelley to pay a debt owed to his mother-in-law for the purchase of a General Motors Company (GMC) pickup truck. The dissolution court concluded correctly that contempt remedies do not apply to the debt payment provision in the decree. We affirm.

## FACTS

Mona Hines (formerly Mona Kelley) and Donald Kelley married in Manchester, New Hampshire, in 2009. We refer to the parties respectively as "Hines" and "Kelly." On May 11, 2021, after a decade of marriage, Hines filed for divorce in Yakima County Superior Court. On October 28, 2021, the Yakima County dissolution court entered a decree of dissolution.

The 2021 dissolution decree awarded each spouse his or her personal property then in his or her possession. The decree expressly awarded Donald Kelley "his GMC pickup (with loan thereon)." Clerk's Papers (CP) at 7. The parties had borrowed $20,000 from Mona Hines' mother to purchase this pickup. Thus, the decree declared:

> The Respondent [Donald Kelley] must pay the debts that are now in his . . . name and the personal loan [from] Petitioner's mother for truck purchase, which he shall timely pay.

CP at 8.

The title to the pickup truck then remained with Mona Hines, although the truck stayed in Kelley's possession. The dissolution decree added:

> Husband owes wife $3,000 for one-half of the [thrift savings plan] loan the parties borrowed and $1,000 for one-half of the tax refund.

CP at 8.

The dissolution decree afforded a spouse the right of reimbursement if that spouse needed to pay a creditor for a debt assigned to the other spouse to pay. Finally, the decree expressly denied either spouse spousal support. Within one month of entry of the dissolution decree, the parties squabbled about payments that Donald Kelley owed to Mona Hines' mother to repay the truck loan. Texts between the former spouses inventively read:

2

> [HINES]: I KNOW what has been paid to mom moron! I set up the payment AND been writing her checks!
> [KELLEY]: Then FUCK you both. Find it!!!
> [HINES]: (smile emoji)
> [KELLEY]: Truck is unfindable. Good fucking luck!!!
> . . . .
> [KELLEY]: Never see this truck.
> [HINES]: Have another drink
> [KELLEY]: Fuck you

CP at 28-29.

On November 8, 2021, a check written by Donald Kelley to Mona Hines' mother, bounced. In her appeal brief, Mona Hines wrote that she needed to make payments on the truck because of Kelley's default. She cited a page of the report of proceedings of a November 3, 2023, hearing, but that page does not confirm the assertion in the brief. Hines' brief cited to no clerk's papers that showed she paid a payment on the truck.

On December 27, 2021, Mona Hines e-mailed Donald Kelley requesting that he comply with the court's order by paying the amounts owed.

> Don,
> This is to formally request the repayment of all owed debt to me per the divorce settlement agreement.
> $3000.00 to Thrift Savings Plan
> $1000.00 to last year's tax returns
> $420.00 in past due truck payment which I covered.
> $1500.00 that was taken out of my account to the joint account which you were responsible for.
> You have paid $2300.00 leaving $3620.00

3

There is also the issue of an unpaid US Cellular bill now in collections $469.29 to be split. (you have the image of the bill on your phone that I sent via text).

All truck payments are to go directly to Barbara Price $420.00 NLT 15th of every month.

I am giving you until Friday Dec. 31, 2021, to settle all funds as the agreement was it would be settled when you received your permanent impairment settlement for about $20,000, which I know you have received. If not paid, I will seek legal action in the form of garnishment of wages to the maximum allowed by Washington State, (where divorce was filed). A Check in the mail from your bank will suffice.

If payments for truck are not made timely, (per divorce decree) we will seek repossession of the vehicle for failure to pay. I would recommend that you just sell it and pay off the remainder or seek refinance through another source so you no longer have to deal with myself or the woman (you have now wished dead on more than one occasion). I do have the title in my possession. I would be more than happy to then sign over the title to you once settlement is agreed upon.

Since your name is also on my vehicle, I will seek refinancing to remove your name off of the Canyon as you are currently reaping the benefits of all of my on-time payments.

Mona Hines

CP at 26-27.

On January 20, 2022, Donald Kelley responded with a proposed payment plan to address the outstanding debts:

This is an agreement between myself and Mona Hines. The agreement is, she sends me the title to my truck for registration purposes and I will refinance the truck to pay off her mom. (Barbara Price) 2015 GMC Sierra will then be free and clear from Mona and Barbara at that point.

4

>       In addition to this agreement.  I will pay Mona Hines 3000.00
> dollars in monthly installments.  Installments will be 300.00 dollars a
> month or more IF possible.
>       If I do not receive said title in mail and have it in hand.  This
> agreement is null and void.  I will send another e-mail when the title
> arrives.
>       Donald Kelley

CP at 25.

Mona Hines agreed to the terms and sent title to the truck to Donald Kelley.  On

January 24, 2022, Donald Kelley confirmed receipt by e-mail declaring:

>       I have title in hand.  I will honor the agreement.
>       Donald Kelley

CP at 25.

Donald Kelley returned to the Granite State and stopped making payments.  In

response, Mona Hines filed a replevin action in the New Hampshire Circuit Court in

order to repossess the truck.  On May 24, 2023, the New Hampshire Circuit Court denied

Mona Hines a writ of replevin.  The New Hampshire Court reasoned that Hines had

relinquished her security interest in the vehicle and, as a result, no longer had a

possessory right.  The court dismissed the replevin action.

At the contempt hearing in Washington State, Donald Kelley asserted that he paid

Mona Hines $6,000 to $7,000, such that he owed her no money.  He provided no records

to confirm the payments.  He did not disclose how much he had paid his mother-in-law.

5

No. 40124-3-III
*In re Kelley and Kelley*

PROCEDURE

On June 20, 2023, Mona Hines filed a motion in the Yakima County Superior Court dissolution proceeding to hold Donald Kelley in contempt for nonpayment of debt. Hines sought a $25,000 judgment that comprised $20,000 for the truck loan, $1,000 in interest, $3,000 for her share of the $6,000 thrift savings plan (TSP) marital debt, and $1,000 for half of a tax refund. She asked the court to impose daily fines for noncompliance, conditions to purge the contempt, and any other relief available under chapters 7.21, 26.09, 26.10, and 26.26 RCW and RCW 26.18.040. Hines expressly requested that the dissolution court jail Kelley unless he returned the truck or paid the outstanding debt.

The court entertained argument of the parties, then pro se, on November 3, 2023. On November 8, 2023, the dissolution court issued a written decision and order. The order denied the motion on the grounds that the decree provisions Mona Hines sought to enforce bore no relationship to spousal support. The order denying the motion noted that Hines' motion failed to identify the amount owed on the pickup truck loan.

LAW AND ANALYSIS

On appeal, Mona Hines assigns error to the dissolution court's denial of the contempt motion. Hines forwards three distinct contentions, although she conflates all of

6

them.  First, the trial court incorrectly wrote that she had not identified, when seeking the contempt order, the amounts owed.  Second, the debt owed to her mother related to her (Hines') support.  Therefore, the historic rule allowing imprisonment for failing to spousal maintenance in dissolution decrees applies.  Third, under a new statutory contempt scheme, the court could have awarded other relief for contempt for failing to pay the debt.

Mona Hines sought contempt relief before the dissolution court for nonpayment of three debts: the $20,000 loan from the mother for the GMC pickup truck, one-half of the loan from the thrift savings plan or $3,000, and $1,000 for her share of a tax refund.  On appeal, the parties focus only on the debt owed to the mother.  We note that Donald Kelley owed this debt directly to his mother-in-law, not to Hines.  Nevertheless, Kelley does not challenge Hines' standing to seek collection of the debt, and she may have standing because of the dissolution decree.  In her motion, Hines asked, as alternative relief, for the return of the GMC pickup truck, but she did not suggest to whom Kelley should return the truck.  Hines, also in her motion, did not claim that she paid any of the loan to her mother.  Nor did Hines request a judgment for reimbursement of any amounts paid.

In her appeal brief, Mona Hines implied that the dissolution court denied her relief, in part, due to her failing to identify the amount remaining owed for the GMC pickup truck loan. The dissolution court mentioned in its order, such a failure, but we do not read the order as basing the denial of contempt sanctions on any such failure. Therefore, we do not address this assignment of error by Hines.

Donald Kelley argues that Mona Hines seeks to enforce a separate post-decree agreement rather than the court's order. Nevertheless, the parties based the agreement on the obligations imposed by the dissolution decree. Kelley may also suggest that Hines' replevin action in New Hampshire established that she lacks any right to enforce the debt by contempt. Nevertheless, the New Hampshire Court decision lacks relevance to Hines' right to enforce a decree earlier entered by a Washington court.

In his appeal brief, Donald Kelley continues to insist that he paid the debt owed to Mona Hines. Because of a lack of evidence, we do not address this contention.

CONTEMPT STATUTES

Mona Hines cites numerous statutes in support of her motion for contempt. According to Hines, the statutes grant a dissolution court wide power and discretion to sanction a party who disobeys a dissolution decree, no matter the nature of the violated provision in the decree. We quote the relevant statutes.

RCW 2.28.010 declares in part:

> Every court of justice has power—
> . . . .
> (4) To compel obedience to its judgments, decrees, orders and process, and to the orders of a judge out of court, in an action, suit or proceeding pending therein.

RCW 2.28.060 repeats the theme found in RCW 2.28.010:

> Every judicial officer has power:
> . . . .
> (2) To compel obedience to his or her lawful orders as provided by law….

Mona Hines emphasizes chapter 7.21 RCW adopted by the legislature in 1998.

RCW 7.21.010 defines terms as:

> The definitions in this section apply throughout this chapter:
> (1) "Contempt of court" means intentional:
> . . . .
> (b) Disobedience of any lawful judgment, decree, order, or process of the court;
> (2) "Punitive sanction" means a sanction imposed to punish a past contempt of court for the purpose of upholding the authority of the court.
> (3) "Remedial sanction" means a sanction imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform.

Chapter 7.21 RCW catalogs both remedial and punitive sanctions for contempt. RCW 7.21.030 lists remedial sanctions:

> . . . .

(2) If the court finds that the person has failed or refused to perform an act that is yet within the person's power to perform, the court may find the person in contempt of court and impose one or more of the following remedial sanctions:

(a) Imprisonment if the contempt of court is of a type defined in RCW 7.21.010(1) (b) through (d). The imprisonment may extend only so long as it serves a coercive purpose.

(b) A forfeiture not to exceed two thousand dollars for each day the contempt of court continues.

(c) An order designed to ensure compliance with a prior order of the court.

(d) Any other remedial sanction other than the sanctions specified in (a) through (c) of this subsection if the court expressly finds that those sanctions would be ineffectual to terminate a continuing contempt of court.

. . . .

(3) The court may, in addition to the remedial sanctions set forth in subsection (2) of this section, order a person found in contempt of court to pay a party for any losses suffered by the party as a result of the contempt and any costs incurred in connection with the contempt proceeding, including reasonable attorney's fees.

Only the prosecuting attorney or city attorney may seek punitive contempt sanctions.

RCW 7.21.040.

To these statutes, we add Washington Constitution article I, section 17 which

imposes limits on contempt sanctions:

There shall be no imprisonment for debt, except in cases of absconding debtors.

The hands of this constitutional provision orchestrate the extent to which a dissolution

court may impose contempt sanctions for breach of a dissolution decree.

DEBT RELATIONSHIP TO SPOUSAL SUPPORT

A dissolution decree may levy a debt on one of the divorcing spouses. This debt might take the form of a nonmonetary obligation to transfer property to the other spouse. The debt could assume the nature of a transfer or equalization payment as part of a property distribution. The debt could also be an order to pay an obligation to a third-party creditor incurred by the parties during the marriage accompanied by a duty to reimburse the other spouse if the creditor collects the debt in part from the other spouse. Finally, the debt could oblige the spouse to pay spousal maintenance or child support to the other spouse.

Washington Constitution article I, section 17 precludes imprisonment for "debt," but the prohibition does not define the word "debt." The proscription also does not distinguish between various forms of debt, including the varieties of debt found in a dissolution decree.

Despite the vagaries in article I, section 17, Washington courts and foreign decisions have distinguished between obligations impressed in dissolution decrees for purposes of the constitutional preclusion. The violation of some provisions in the decree may lead to imprisonment for contempt while other breaches may not. Generally speaking, under Washington law, failure to pay spousal maintenance or child support can

lead to incarceration. Incarceration for all other breaches of the decree would violate the constitution. Sometimes, the obligation waffles in between the category of support or maintenance, on the one hand, and a property settlement, on the other hand. In this situation, the obligor bears the burden to establish the debt to be other than spousal or child support in order to avoid incarceration. A distinct and more difficult question, which we address later in this opinion, is whether the movant spouse may procure a contempt citation and sanctions, other than imprisonment, for debts arising from dissolution decree obligations other than maintenance and support.

We question the distinction between a dissolution decree provision obligating payment of child support or spousal maintenance from a provision that allocates property or debt. A property transfer, an equalization payment, and payment of a community debt affords as much support to the one spouse as does child support and spousal maintenance payments. We follow precedent, nonetheless.

Terminology attended to marital dissolution cases has evolved from earlier years into a politically correct era in Washington state. A "divorce" is now a "dissolution." "Alimony" is now "spousal maintenance." Because our analysis includes cases from the bygone era, we employ the various terms interchangeably.

A court in a divorce action holds authority to enforce its decree in a contempt proceeding. *Stablein v. Stablein*, 59 Wn.2d 465, 466, 368 P.2d 174 (1962); *Decker v. Decker*, 52 Wn.2d 456, 465, 326 P.2d 332 (1958); *Berry v. Berry,* 50 Wn.2d 158, 162, 310 P.2d 223 (1957); *In re Marriage of Peacock*, 54 Wn. App. 12, 17, 771 P.2d 767 (1989). Nevertheless, early Washington cases permitted the use of contempt of court procedures to enforce alimony, child support, and child custody orders, but barred contempt to enforce property divisions. *Robinson v. Robinson*, 37 Wn.2d 511, 225 P.2d 411 (1950); *State ex rel. Lang v. Superior Court*, 176 Wash. 472, 30 P.2d 237 (1934); *State ex rel. Ridenour v. Superior Court*, 174 Wash. 152, 24 P.2d 418 (1933).

Washington courts recognize the seminal Supreme Court decision on the subject of contempt from breaches of a dissolution decree to be *Decker v. Decker*, 52 Wn.2d 456 (1958). *McFerran v. McFerran*, 55 Wn.2d 471, 348 P.2d 222 (1960); *Brantley v. Brantley*, 54 Wn.2d 717, 344 P.2d 731 (1959). Some Washington decisions stray from the teachings of *Decker*, but still pay homage to the ruling and pretend to follow its instructions.

*Decker v. Decker* abandoned a formal distinction between property allocations on the one hand, and spousal and child support, on the other hand, for purposes of adjudging the constitutionally of holding a spouse in contempt. Even if the dissolution decree

13

labeled a proviso to be a property division, the dissolution court may hold the obligor

spouse in contempt if the duty bears a reasonable relationship to the duty to support one's

wife or children. *Decker v. Decker*, 52 Wn.2d 456, 457 (1958). Whether a payment

relates to support is a question of fact. *Decker v. Decker*, 52 Wn.2d 456, 457 (1958).

Language in *Decker* suggests that the obligor holds the burden to show whether the

obligation possesses no relationship to spousal maintenance or child support rather than

the obligee establishing a relationship. *Decker v. Decker*, 52 Wn.2d 456, 465 (1958).

The distinction between property settlements and child and spousal support for

purposes of imprisonment for debt follows from a reading of constitutional history. The

history establishes that America never intended the prohibition of incarceration for debt

to apply to marital relations but instead to the "run-of-the-mill debtor-creditor

relationship." *Brantley v. Brantley*, 54 Wn.2d 717, 720 (1959); *Decker v. Decker*, 52

Wn.2d 456, 458 (1958). The law, however, fails to recognize that, if drafters of the

clause intended the prohibition to apply to typical debtor-creditor relationships and not

affiliations between former spouses, incarceration should also be barred for failure to

obey any of the dissolution decree duties, including spousal maintenance and child

support.

14

Courts grant dissolution courts the power to impose contempt sanctions for failure to pay child and spousal support based on society's interest in resolution of marital disputes. *Decker v. Decker*, 52 Wn.2d 456, 458 (1958). This rationale also applies regardless of the nature of a decree obligation. Finally, a reason behind ignoring the prohibition in article I, section 17 in the context of child and spousal support is that such context includes "an order to pay." *Decker v. Decker*, 52 Wn.2d 456, 458 (1958). This distinction makes no sense since the duty to pay an equalization payment and to pay a community debt also entails an "order to pay."

In *Decker v. Decker*, 52 Wn.2d 456 (1958), the divorce decree required the husband to pay some community debts incurred before the dissolution. The ex-wife brought contempt proceedings to compel her ex-husband to comply with the provisions of a divorce decree which required him to pay certain community debts incurred before the divorce. The court asked whether the constitutional prohibition against imprisonment for debt barred the trial court from using contempt powers and imprisonment to enforce compliance with the provision of the divorce decree. The trial court denied contempt sanctions because the provision for payment of the community debt was a part of a property settlement, agreed on orally by the parties.

On review, the Supreme Court remanded to the superior court to analyze the nature of the obligation to pay the community debts. We quote a lengthy passage from the decision that discusses the history and reasons for the distinction between payment duties inside and duties outside the proscription of article I, section 17 in addition to instructions to dissolution courts:

> The problem presented involves considerably more than the mere fact of noncompliance with a court order. It prompts considerations other than the matter of an affront to the dignity of the court—which in itself is serious enough. Society has a vital interest in marital disputes and their adjustment by the courts. The enforceability of provisions of divorce decrees as to support and custody, particularly, involves serious problems of public policy, which should not be resolved through the simple expedient of referring somewhat automatically to previous decisions of this or other courts.
>
> We believe the constitutional prohibition against imprisonment for debt relates to run-of-the-mill debtor-creditor relationships arising, to some extent, out of tort claim, but principally, out of matters basically contractual in nature. In such cases the judgment of the court is merely a declaration of an amount owing and is not an order to pay. Problems of domestic relations involving alimony, support payments, property settlements, together with court orders in connection therewith, do not normally fall into the debtor-creditor category.
>
> It has been clear in this state for over fifty years that arrearages in alimony and support payments do not constitute a debt within the meaning of the constitutional prohibition. Article I, section 17. Provisions as to support contained in a divorce decree simply make specific the husband's legal duty to support his wife or children . . . However, in cases wherein such provisions were not clearly spelled out or were not characterized as alimony or support, our decisions are in conflict.
> . . . .

The inherent similarity between alimony and property settlements is emphasized by the foregoing decisions. Fundamentally, most decisions relative to marriage problems recognize that the trial court has a duty to protect the interests of the public in such matters, as well as the welfare of the parties—and usually this means the duty to see that the wife or children are adequately supported. This duty is made specific by the following statutory language requiring the courts to make "such disposition of the property of the parties, either community or separate, as shall appear just and equitable, having regard to the respective merits of the parties, to the condition in which they will be left by such divorce or annulment, to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children, and shall make provision for costs, and for the custody, support and education of the minor children of such marriage." RCW 26.08.110.

It is clear that the parties to a divorce action cannot foreclose the public interest in their marital responsibilities by a contract or an agreement of settlement. Marital problems involve something more fundamental than nomenclature and technical contract rights. There is no sound reason for allowing a husband to contract away his duty to support his wife and children under the guise of a "property settlement agreement."

We hold that contempt proceedings are a proper remedy to enforce the court's order with respect to property settlements—whether or not the settlement was previously agreed to by the parties, so long as it is embodied or incorporated by reference in the divorce decree. The husband may be imprisoned until he complies with the court's order, unless: (1) he can show that he does not have the means to comply with the order, or (2) he can show that the particular provision sought to be enforced has no reasonable relation to his duty to support his wife and/or children.

. . . .

Wherever we have felt the result of the decree was reasonably incident to the division of the property, *as between the parties*, we have looked through the form of the words used, treating as surplusage language not literally enforcible [sic] as to third parties, and have sustained the trial court. The trial court needs broad powers to meet the infinite variety of factual situations presented to it . . .

17

In the superior court hearing, the trial court made no finding as to whether there is a reasonable relation between the provision here sought to be enforced through contempt proceedings and the duty of respondent to support appellant. This is a question of fact, all things considered, including the factor of possible defenses to the debts by the husband and wife.

*Decker v. Decker*, 52 Wn.2d 456, 457-59 (1958).

Later decisions from both the Supreme Court and Court of Appeals afford guidance in determining whether the dissolution decree obligation relates to support of the spouse or children. The order need not employ the word "alimony" in order to be alimony. *State ex rel. Adams v. Superior Court for Pierce County*, 36 Wn.2d 868, 871, 220 P.2d 1081 (1950). Contempt sanctions are permissible if the fair import of the language clearly indicates the court intended the award was for alimony or maintenance. *State ex rel. Adams v. Superior Court for Pierce County*, 36 Wn.2d 868, 871 (1950). A property award generally relates to existing real, personal or mixed property over which the court has acquired jurisdiction and which under Washington statute must be equitably distributed. *State ex rel. Adams v. Superior Court for Pierce County*, 36 Wn.2d 868, 871 (1950). A money judgment determines an amount owing on a past obligation. *State ex rel. Adams v. Superior Court for Pierce County*, 36 Wn.2d 868, 871 (1950). A decree for alimony or maintenance directly commands the payment of money. *State ex rel. Adams v. Superior Court for Pierce County*, 36 Wn.2d 868, 871 (1950).

We examine in linear order several of the numerous Washington decisions addressing requests for imprisonment because of a violation of a dissolution decree. In *State v. Ditmar*, 19 Wash. 324, 53 P. 350 (1898), the divorce court ordered William Ditmar to pay a mortgage of $500 on the couple's residence, which residence the court awarded to Josephine Ditmar. William failed to pay and told Josephine he would never pay the debt. Nevertheless, William had the ability to pay as evidenced by his procurement of a loan for $1,200 for his own use. After holding William in contempt, the divorce court imposed a fine of $1, ordered William to pay the entire mortgage debt by a deadline, and jailed William until retirement of the mortgage. The Supreme Court, when affirming the trial court, noted the constitutional prohibition of incarcerating one for nonpayment of a debt. Nevertheless, the prohibition did not apply when the debtor possessed the ability to pay. The court did not discuss whether the article I, section 17 proscription applied to a debt arising from a divorce decree or whether the obligation to pay the mortgage related to Josephine's need for support.

In *State ex rel. Foster v. Superior Court, Yakima County*, 193 Wash. 99, 102-04, 74 P.2d 479 (1937), *overruled by Decker v. Decker*, 52 Wn.2d 456 (1958), William Foster refused to pay $200 of the amount ordered to be paid by the terms of the interlocutory divorce decree. The dissolution court adjudged William in contempt and

ordered him confined in jail until he complied with the decree. On review, the Supreme Court noted the rule that, if the decree provides for the division of the property of the divorced parties or makes a property award to the wife, then its provisions cannot be enforced by contempt, but, on the other hand, if the decree is one providing for alimony, the other spouse may resort to contempt proceedings in order to enforce its performance. The Supreme Court considered the order to pay to be part of a property division, because the debt to the wife released her interest in the parties' community property. In addition, the dissolution decree mentioned no payment of alimony or support.

In *Decker v. Decker*, the Supreme Court wrote that it overruled *Foster v. Superior Court* to the extent *Foster* was inconsistent. But the court did not identify any inconsistency. The undisputed facts showed the obligation to be unrelated to the support of Lydia Foster.

In *Davis v. Davis*, 15 Wn.2d 297, 130 P.2d 355 (1942), decided before *Decker v. Decker*, the divorce decree ordered the husband to pay the wife's attorney fees amounting to $175. The Supreme Court held that the ex-wife could enforce the provision for fees as if the debt was alimony. The court reasoned that, in a normal debt situation, a judgment merely determines an amount owing, but that in a divorce action the court has authority

to order a party to pay. The court did not analyze whether payment of attorney fees was similar in nature to spousal maintenance.

*Robinson v. Robinson*, 37 Wn.2d 511 (1950) entails a writ of assistance not a contempt citation. The court declared the rule of this state, based on article I, section 17, to preclude the enforcement, by contempt proceedings, of payments of money, except alimony and child support. Nevertheless, the court through another proceeding, may order other remedies against a recalcitrant party who disobeys a property division. Divorce decrees cannot be rendered impotent. The Supreme Court reversed the superior court's ruling that it lacked power to grant the writ of assistance. The Supreme Court held that John Robinson could obtain a decree requiring divorcing wife Lois to sign paperwork necessary to fulfill a property division. In the event of Lois' failure to sign, the superior court could appoint a suitable person to execute and deliver such an instrument.

In *Brantley v. Brantley*, 54 Wn.2d 717 (1959), decided after *Decker v. Decker*, the default divorce decree did not specifically mention, or award, alimony to the wife, Lena Brantley, but the decree ordered husband Robert to pay debts of the marital community totaling $202.59. He did not do so. The dissolution court held Robert in contempt and was jailed until he paid. The Supreme Court affirmed. According to the high court, the

contempt citation did not violate the constitutional provision against imprisoning a

debtor. The community creditors were not parties to the original divorce proceeding, nor

to the contempt proceedings. Thus, the original creditors had not sought to imprison

Robert for the debt. The court wrote:

> In a situation such as this—where a husband is ordered to pay or
> liquidate financial obligations of a defunct marital community which is
> itself about to be liquidated or terminated as a legal entity by the divorce
> court—we are convinced that the husband should and may be punished for
> contempt for disobedience in the same manner as if he had been ordered to
> deliver children of the community into the custody of the wife and had
> failed so to do.

*Brantley v. Brantley*, 54 Wn.2d 717, 718-19 (1959). As indicated in *Decker v. Decker*,

article I, section 17 was not designed to thwart or prevent a proper exercise of the equity

power and discretion of Washington divorce courts. The prohibition of imprisonment for

nonpayment of debt never resulted from public dissatisfaction and demand against

activities of divorce courts in connection with their efforts to resolve marital disputes. Of

course, the *Brantley* court's reasoning should allow imprisonment for a violation of any

provision of a dissolution decree regardless of its nature.

Despite the ornamental excursion into constitutional history, the Supreme Court,

in *Brantley v. Brantley*, ended its trip into dicta and analyzed whether Robert Brantley's

obligation arose from alimony or a property settlement. The court discounted the fact

that the divorce complaint never prayed for spousal alimony. Nor did the divorce decree use the words "alimony" or "property settlement." Instead, the dissolution court needed to determine whether the provision sought to be enforced by contempt proceedings, regardless of the name given it, bore a reasonable relationship to the husband's duty to support his wife and children. Because the dissolution court had failed to make such a finding, the Supreme Court remanded for the court to enter such a finding.

In *Kinne v. Kinne*, 82 Wn.2d 360, 510 P.2d 814 (1973), the Supreme Court again dealt with whether a payment was support or a property distribution. The decree required LeRoy Kinne to pay Marie $156 per month until her remarriage or death or until she garnered an independent income of more than $200 per month. The decree further stated the monthly payments could not be reduced or terminated unless the express conditions were satisfied. LeRoy subsequently moved to modify the monthly payments, arguing they were support and subject to reduction. The trial court adjudged LeRoy bound by the decree that labeled the payments a property settlement and ordered that the payments could not be modified. The Supreme Court affirmed. The *Decker* court had held that the court should look behind the obligation to determine whether it was a property debt or support debt and not simply rely on the label given in the dissolution decree. Nevertheless, the *Kinnie* court ruled that a court must discern the meaning of an

unambiguous decree from the language alone and not from parol evidence. No passage

in *Decker* suggested that unambiguous language should preclude the dissolution court

from analyzing the true nature of the obligation.

In *In the Matter of Marriage of Young*, 26 Wn. App. 843, 615 P.2d 508 (1980), the

parties' decree required Leo Young to pay his wife June $49,000 at $250 per month, to

offset his military pension. The dissolution decree also required Leo to maintain an

insurance policy on his own life as security for the debt. No maintenance was awarded.

The dissolution court held Leo in contempt for failing to make the monthly payments and

allowing the insurance to lapse. The Court of Appeals reversed and vacated the judgment

of contempt. The court found the payment was a property settlement based on the decree

and underlying findings of fact and conclusions of law. The decree awarded June a lump

sum judgment based on a mathematical percentage in an actuarially valued asset. This

court stated, "In the face of this clear and unambiguous expression of the dissolution

court's intent, we cannot now, even in the face of Mr. Young's blatant refusal to pay the

judgment, recharacterize the award as support rather than a property settlement." 26 Wn.

App. 843, 846 (1980). Article I, section 17 of the Washington State Constitution

demanded such a ruling.

In *In re Marriage of Mathews*, 70 Wn. App. 116, 853 P.2d 462 (1993), *abrogated by In re Marriage of Wilcox*, 3 Wn.3d 507, 553 P.3d 614 (2024), Donald Mathews assigned error to the dissolution court's finding him in contempt for failing to comply with the decree of dissolution. Donald and Carolyn enjoyed a long-term marriage. Donald worked as a firefighter and garnered other income by moonlighting jobs. Carolyn suffered from illnesses and made little money as a church bookkeeper. The dissolution court ordered Donald to pay the real estate taxes on the family residence awarded to Carolyn, Carolyn's health insurance premiums for three years, and her tuition for six quarters of schooling so that she could obtain training as a medical secretary. The court further ordered spousal maintenance of $1,400 per month until Carolyn obtained fulltime gainful employment. Finally, the dissolution court entered judgment against Donald for Carolyn's attorney fees in the amount of $16,500.

Donald Matthews made no payments on any of his obligations. When Carolyn moved for a contempt citation, Donald contended he lacked the ability to pay. The superior court rejected this argument. This court summarily affirmed an order of contempt without addressing the nature of the obligations.

We marry the principles of law in Washington dissolution decree decisions, particularly *Decker v. Decker*, with the factual scenarios in those decisions to adjudicate

25

Mona Hines' appeal. We rule in favor of Donald Kelley because the facts establish the obligation to pay his mother-in-law for the GMC pickup truck debt was unrelated to support for Mona Hines.

Mona Hines highlights that her dissolution decree did not enter any judgment but rather ordered Donald Kelley to pay a debt. In so arguing, she relies on *Davis v. Davis*, 15 Wn.2d 297 (1942) that emphasizes an order to pay as being sanctionable by contempt. Hines may imply that the lack of a judgment signifies the order to pay the pickup truck debt being for her support, not a property settlement. We must, however, promote substance over form. We see no relationship between the lack of a judgment in the dissolution decree and the obligation being related or unrelated to spousal maintenance. The Supreme Court decided *Davis v. Davis* before the seminal decision in *Decker v. Decker*.

Mona Hines underscores that the *Decker* decision imposes the burden on the debtor to show the obligation to pay lacks a reasonable relationship to the support of the spouse or children. Hines also posits that, under *Decker*, the inclusion of the duty in the property and debt section of the decree does not make the obligation unrelated to support because the form of the order does not control. We agree with these two propositions. Nevertheless, the facts still show no relationship between the Donald Kelley's debt and

spousal maintenance. The dissolution decree expressly reads that neither party needed support from the other.

We disagree with Mona Hines' assertion that the trial court was motivated, when ordering that Donald Kelley pay the debt, by a desire to balance the resources and liabilities of the party so that each could maintain a minimum level of support. We do not read this intention into the decree. Paragraph 13 of the dissolution decree declared, "Spousal Support. No spousal support is ordered." CP at 8. This language establishes no need of Hines for support from Kelley. The decree demands payment to Hines' mother, not Hines. The decree likely imposed the duty to pay the debt onto Kelley because the decree granted him possession of the pickup truck. Hines is not using the GMC pickup truck such that Kelley's payment of the mother preserves transportation for Hines. Hines presents no evidence establishing a need for support or that she may become a public charge. She presents no evidence that she paid her mother some of the debt. She, instead, understandably wants her deadbeat former husband to meet his obligation to her mother.

*State v. Ditmar*, 19 Wash. 324, 53 P. 350 (1898) involved an obligation to pay a debt of the marital community. The court held William Ditmar in contempt for failing to pay a mortgage. *State v. Ditmar* has not been tossed into a heap of outdated detritus, but

we consider *Decker v. Decker* to limit *Ditmar*'s force. If the obligor shows the duty to pay a third party does not relate to the support of the spouse, he avoids incarceration.

*Brantley v. Brantley*, 54 Wn.2d 717 (1959), like *State v. Ditmar*, addresses a dissolution decree obligation to pay a third-party creditor. Despite the decision's rhapsody promoting enforcement by contempt of all violations of a decree, the Supreme Court abruptly curtailed the music and returned to *Decker*'s prohibition against contempt for obligations unrelated to child support and spousal maintenance.

Unsurprisingly, the behavior of Donald Kelley displeases us. Nevertheless, as denoted in *In re Matter of Marriage of Young*, 26 Wn. App. 843 (1980), the constitution compels our decision.

OTHER AVAILABLE RELIEF FOR CONTEMPT

We arrive at the difficult question that deserves resolution by the Supreme Court. The dissolution court not only refused to incarcerate Donald Kelley, but also declined to hold Donald Kelley in contempt. In turn, the court rejected any relief for Mona Hines. Hines contends that, assuming the dissolution court lacked authority to incarcerate Kelley, the court should have still held him in contempt and awarded one or more other remedies. Hines arrays numerous astute arguments in favor of this assignment of error. Based on a reading of case law, however, we reject those contentions.

Before addressing Mona Hines' assertions, we respond to Donald Kelley's request that we ignore Hines' request for other sanctions on the basis that Hines failed to identify any other remedy sought. We disagree. In her motion for contempt, Hines asked, in the alternative, for a $25,000 judgment, daily fines for noncompliance, return of the truck, conditions to purge the contempt, and any other relief available under chapters 7.21, 26.09, 26.10, and 26.26 RCW and RCW 26.18.040. Hines repeats these requests in her appeal brief.

When assigning error to the dissolution court's ruling, Mona Hines stresses that a court in a dissolution proceeding has the authority to enforce its decree in a contempt proceeding. *Stablein v. Stablein*, 59 Wn.2d 465, 466 (1962); *Decker v. Decker*, 52 Wn.2d 456, 465 (1958); *Berry v. Berry*, 50 Wn.2d 158, 162 (1957); *In re Marriage of Peacock*, 54 Wn. App. 12, 17 (1989). The authority arises from the inherent power of any court to punish disobedience to its orders.

Mona Hines contends that the article I, section 17 only prohibits imprisoning a debtor and does not preclude other contempt relief for nonpayment of a nonsupport debt owed under a dissolution decree. Therefore, even if Donald Kelley violated a dissolution decree provision unrelated to support, the constitution allows sanctions other than incarceration. No Washington decision has adopted this view, however.

Mona Hines next underscores that the Washington State Legislature, in 1989, adopted a new contempt statute that afforded a spouse a wide range of other coercive sanctions unrelated to imprisonment. For this reason, she insists that pre-1989 decisions, including *Decker v. Decker*, 52 Wn.2d 456 (1958), lack binding authority. Hines adds that decisions since 1989, such as *In re Marriage of Curtis*, 106 Wn. App. 191, 23 P.3d 13 (2001), fail to recognize the adoption of the new contempt code. In so arguing, Hines does not analyze whether pre-1989 statutes expressly mentioned other sanctions.

Mona Hines focuses on the inventory of contempt sanctions found in RCW 7.21.030. The list includes, besides imprisonment, fines, forfeitures, payment of attorney fees, and any other remedy that would reasonably prompt Donald Kelley to obey the order to pay.

We reject Mona Hines' argument because similar statutory language affording other remedies for contempt existed at the time of the 1958 decision in *Decker v. Decker*, 52 Wn.2d 456 (1958) and even before. The 1989 enactment of RCW 7.21.030 changed little in the law regarding contempt, as the law began in statutes adopted in 1869 during territorial days. *State ex rel. Erhardt v. MacGillivray*, 52 Wn.2d 485, 486, 326 P.2d 738 (1958).

In 1958, the year of *Decker v. Decker*, 52 Wn.2d 456 (1958), some of the

contempt statutes read:

> Punishment — General.  Every court of justice, and every judicial officer has power to punish contempt by fine or imprisonment, or both.  But such fine shall not exceed three hundred dollars, nor the imprisonment six months; and when the contempt is not of those mentioned in RCW 7.20.010 (1) and (2), it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby, before the contempt can be punished otherwise than by a fine not exceeding one hundred dollars.

Former RCW 7.20.020 (1987).

> Judgment and sentence.  Upon the evidence so taken, the court or judicial officer shall determine whether or not the defendant is guilty of the contempt charged; and, if it be determined that he is so guilty, shall sentence him to be punished as provided in this chapter.

Former RCW 7.20.090 (1987).

> Indemnity to injured party.  If any loss or injury to a party in an action, suit or proceeding prejudicial to his rights therein, have been caused by the contempt, the court or judicial officer, in addition to the punishment imposed for the contempt, may give judgment that the party aggrieved recover of the defendant a sum of money sufficient to indemnify him, and to satisfy his costs and disbursements, which judgment, and the acceptance of the amount thereof, is a bar to any action, suit or proceeding by the aggrieved party for such loss or injury.

Former RCW 7.20.100 (1987).

> Offender may be indicted.  Persons proceeded against according to the provisions of this chapter, are also liable to indictment or information for the same misconduct, if it be an indictable offense, but the court before

which a conviction is had on the indictment or information, in passing
sentence shall take into consideration the punishment before inflicted.

Former RCW 7.20.120 (1987), (emphasis omitted).

Just as the current law allows contempt sanctions of fines and losses suffered by

the moving party, the law in 1958 afforded such remedies. The former code also

mentioned criminal indictment. Admittedly, today's RCW 7.21.030(2)(d) allows "any

other remedial sanction" if the court expressly finds the listed sanctions to be ineffectual.

The code in 1958 held no such language. But the meat of the sanctions lay in the former

code. Also, the former code did not preclude related sanctions that could effectuate a

resolution of the breach, but the Supreme Court in *Decker v. Decker* did not support such

other sanctions.

Despite the additional remedies of forfeiture, fines, and indemnification of losses

being available in a contempt proceeding throughout the life of Washington state, all of

the decisions hold that the breaching spouse, as long as he does not violate an order to

pay spousal maintenance or child support, cannot be held in contempt. *McFerran v.

McFerran*, 55 Wn.2d 471 (1960); *Brantley v. Brantley*, 54 Wn.2d 717 (1959); *Decker v.

Decker*, 52 Wn.2d 456 (1958); *State ex rel. Foster v. Superior Court of Yakima County*,

193 Wash. 99 (1937); *State v. Ditmar*, 19 Wash. 324 (1898); *In re Marriage of Curtis*,

106 Wn. App. 191 (2001); *In re Matter of Marriage of Young*, 26 Wn. App. 843, 615

(1980). This state of the contempt law echoes the law of creditor-debtor relationships. In addition to having no right to throw the debtor in jail, the creditor may not force payment, impose fines, gain indemnification for losses, or benefit from other remedies that might convince the debtor to finally pay the debt. For this reason, we hold that the astute dissolution court correctly rejected any contempt sanctions.

Mona Hines relies on *Cox v. Cox*, 20 Wn. App. 2d 594, 501 P.3d 155 (2021). In *Cox*, this court ruled that the dissolution court could grant a writ of restitution in order to enforce a dissolution decree. The court recognized the superior court's statutory authority, under RCW 2.28.010(4), to compel obedience to its decrees. The court wrote:

> When no proceeding is prescribed, a court may draw from its implied powers to compel obedience . . . [I]f the course of proceeding is not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the laws.

*Cox v. Cox,* 20 Wn. App. 2d 594, 598-99 (2021).

In *Robinson v. Robinson*, 37 Wn.2d 511 (1950) the Supreme Court also permitted a writ of assistance in order to enforce a dissolution decree. We do not consider *Cox v. Cox* or *Robinson v. Robinson* relevant. Contempt sanctions and their stigma differ greatly from a writ of restitution and a writ of assistance.

33

Mona Hines asked for a judgment or return of the truck. We disagree that Hines could gain such relief by either a contempt motion or other dissolution decree enforcement proceedings. The dissolution decree did not order Donald Kelley to pay the debt on the GMC pickup truck to Hines. Kelley owes the debt for the truck to his former mother-in-law. If the court granted Hines judgment for the debt, Kelley would remain subject to an additional judgment in favor of the mother-in-law. The mother-in-law is not a party to this dissolution proceeding. She remains free to sue, obtain a judgment against Donald Kelley, and execute on Kelley's nonexempt assets.

CONCLUSION

We affirm the dissolution court's denial of Mona Hines' motion for contempt.

_____
Fearing, J.P.T.[1]

WE CONCUR:

_____        _____
Lawrence-Berrey, C.J.                              Murphy, J.

---

[1] George Fearing, a retired judge of the Washington Court of Appeals, is serving as a judge pro tempore of this court pursuant to RCW 2.06.150(1).